**UNITED STATES of America,**

v.

**Anthony COLOMBO, et al., Defendants.**

**No. 85 Crim. 244 (HB).**

United States District Court,
E.D. New York.

Aug. 28, 1985.

---

**44.** *See* note 4 *supra.*

**45.** *See* note 1 *supra.*

Raymond J. Dearie, U.S. Atty., Eastern Dist. of New York, Edward A. McDonald, Atty.-in-Charge, U.S. Dept. of Justice,. Organized Crime Strike Force, Eastern Dist. of New York, Michael A. Guadagno, Asst. Atty.-in-Charge, Brooklyn, N.Y. (Donald S. Sullivan, Sp. Asst., U.S. Atty., Brooklyn, N.Y., of counsel), for U.S.

Slotnick & Cutler, P.C., New York City by Barry Ivan Slotnick, Bruce Cutler and Jill G. Okun, New York City, for defendants.

## MEMORANDUM and ORDER on BAIL

WEINSTEIN, Chief Judge:

Defendant Anthony Colombo was indicted along with twenty-four codefendants in an indictment charging sixteen crimes. The government seeks to reverse a magistrate's decision to release him on bail pending trial. Important statutory and constitutional issues of apparent first instance are raised by this application.

The government originally sought detention on grounds of guarantee of appearance and protection against further crimes. Its reliance is now wholly on its perceived need to protect the public pending trial.

At the conclusion of a detention hearing on April 29, 1985 the Magistrate held that pretrial incarceration was required. References that follow are to the transcript of the April 29 hearing:

> I'm ordering detention.... First of all, there is a presumption which arises out of [the] narcotics elements of the conspiracy that the defendant represents a threat to the safety of the community. True, the existence of the presumption does not divest the Government of its requirement to prove by clear and convincing evidence the facts that give rise to the risk to the public. I feel that the Government notwithstanding its inordinate reliance on Mr. Ferraro [chief witness against defendant] has achieved this test. Mr. Ferraro's narrative is corroborated in many details.
>
> I am satisfied that Mr. Ferraro's testimony might very well be believed by a jury. And [if] it were to be believed, there is an overwhelming array of testimony that satisfies me that the defendant presents a threat to the safety of the public, or consistent pattern of orches-

trating a series of violent criminal operations.

\*    \*    \*    \*    \*    \*

... I'm reasonably convinced, if the defendant were in custody, his visitors would be limited, and he would not have the freedom of operation to threaten the public in a federal detention facility that he would have if he were at large. Tr. pp. 81–83.

The Magistrate then expressed concern that the trial of the defendant might not commence within a reasonable period which he deemed to be 90 days. He invited an application for reconsideration should the defendant still be in custody solely because of the detention order 90 days from the day of his arrest. Tr. p. 84.

On July 19, 1985, more than 90 days following the defendant's arrest, the trial had not commenced. When the defendant returned to the Magistrate for reconsideration of the order of detention the Government challenged the Magistrate's jurisdiction to reconsider the order. The Magistrate's response to that challenge was that he would hear the application to reconsider if Judge Bramwell, to whom the case was assigned for all purposes, approved. Tr. of proceedings before Judge Bramwell on July 19, 1985 at p. 4. Judge Bramwell referred the parties back to the Magistrate

> for him to hear whatever he wishes to hear concerning the bail application and to make whatever decision he feels is consistent in the best interests of all concerned. I refer you back to him. You could go back to him and if he wishes to hear further argument I'll permit; and I authorize him to hear whatever Mr. Cutler [defense counsel] has to say as to Mr. Colombo and make ... findings....

*Id.* at 7–8.

The Magistrate held a hearing on August 7, 1985. At the outset he made it clear that if the application for reconsideration were predicated upon the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., it would be denied. (References that follow are to the

transcript of proceedings before the Magistrate on August 7, 1985.) Tr. p. 3. The Magistrate ruled that his reconsideration would be confined to

> whether or not new evidence that was unavailable for my consideration at the earlier detention hearing attenuates the findings that I made that there is clear and convincing evidence that this defendant poses a threat to the community. That's all I need concern myself with.

Tr. p. 8.

His original order was modified by the Magistrate for two reasons: the public was not being protected by the defendant's incarceration because he could just as effectively direct the commission of acts of violence from his prison cell (Tr. pp. 39, 50), and absence of any direct evidence that the defendant "physically hit anybody, struck anybody, raped anybody, [or had] been in anybody else's home in connection with any robbery." Tr. pp. 46, 47. The Magistrate summarized his views as follows:

> The only difference between my findings in April and my findings this afternoon [is] that inasmuch as this defendant did not himself participate in any violent act and that inasmuch as the defendant['s] [ability] to orchestrate violent actions is only moderately attenuated by his incarceration, that the purpose of the act, the protection of the public is not served by this defendant's incarceration. This is my only basis for changing my ruling.

Tr. pp. 54–55.

The Magistrate concluded the hearing by fixing bail in the amount of $500,000 to be secured by a deed to a home valued at $200,000 and by sureties with a collective net worth of an additional $200,000. This bail is sufficient to ensure availability for trial but it is not designed to protect the public against the possibility that defendant will commit crimes pending trial.

His modified order was stayed by the Magistrate pending the Government's appeal to a district judge pursuant to 18 U.S.C. § 3145(a)(1). Because Judge Bramwell was on a scheduled vacation, the parties appeared on August 8, 1985 before

Judge Glasser, the Miscellaneous Judge hearing all emergency matters during the month of August. After hearing argument, Judge Glasser recused himself on August 16. The case was then referred to me as the only other judge available. The matter was set down for an evidentiary hearing and argued before me on August 17 and August 19.

The parties agree that the determination by this Court may be made upon the April 29, 1985 detention hearing minutes before the Magistrate; the July 19, 1985 minutes of the proceedings before Judge Bramwell; the August 7, 1985 minutes of a hearing before the Magistrate; and transcripts of recorded telephone conversations on July 27, 1983, August 6, 1983 and August 10, 1983.

The Government argues that the Magistrate lacked jurisdiction to modify his order. It also contends that if he had jurisdiction, he abused his discretion.

### Magistrate's Jurisdiction

■ The Magistrate had jurisdiction to reconsider his order. By the explicit terms of 28 U.S.C. § 636(a)(2), the Magistrate is empowered to "issue orders pursuant to Section 3142 of Title 18 concerning release or detention of persons pending trial...." Authority to issue such orders can also be delegated to a Magistrate by a Judge pursuant to 28 U.S.C. § 636(b)(1)(A). In this instance the Magistrate had original jurisdiction as well as jurisdiction pursuant to the delegation by Judge Bramwell on July 19, 1985.

■ A judicial officer, whether Magistrate or Judge, has inherent power to reconsider his own order. *Cf. United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985) (appeal to district court judge after magistrate denied motion to reconsider magistrate's decision to detain defendant without bail). Moreover, the Magistrate expressly reserved the right to reconsider in his original order. He had the right, as a matter of inherent power, to modify his order for any of the reasons stated in Rule 60(b) of the Federal Rules of Civil Procedure which applies by analogy to federal criminal proceedings. *Cf.* Rule 57(b) of the Rules of Criminal Procedure (if "no procedure is specifically provided" in the Rules of Criminal Procedure, the court may proceed in any lawful manner).

### Method and Standard in Reviewing Magistrate's Order

■ Section 3145 of the Bail Reform Act is silent as to the method and standard of review applicable in an appeal from a magistrate's bail decision. Section 636(b)(1)(A) of title 28 provides for review of a magistrate's determination on a matter referred by a district judge "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." This would imply that there need not be a new evidentiary hearing by the district judge.

The Second Circuit requires that the district court make an "independent determination" in reviewing a magistrate's detention or release order. *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985). The *Leon* case does not decide whether there must be a new evidentiary hearing by the judge. Apparently the court may, in its discretion, rely on the record before the magistrate or take additional evidence. *Compare, United States v. Delker,* 757 F.2d 1390, 1394–95 (3d Cir.1985) (no error for district court to conduct independent evidentiary hearing), *with United States v. Hazime,* 762 F.2d 34, 36 (6th Cir.1985) ("[a]lthough noting that a clearly erroneous standard for review of the magistrate's decision was probably correct, the District Court held a *de novo* hearing on the detention order").

It remains unclear whether the "independent determination" mandated by *Leon* and *Delker* requires a second full evidentiary hearing by the district court should the defendant or the government seek one. That issue is not decisive in the instant case because the parties stipulated that the record before the magistrate was the evidence to be considered by the district court.

Requiring two evidentiary hearings—the first before the magistrate and the second before the district court—would impose an undue burden on the court. Our individual calendar system is already threatened by the recent influx of RICO and other complex criminal indictments. The need to clear judges' calendars of as much motion practice as possible so that there is time for conducting trials suggests that only the magistrate should conduct the bail application evidentiary hearing unless, in an unusual case, the district court judge, in the exercise of his or her discretion, reopens the matter for new evidence. The fact that the parties on appeal in the instant case relied upon the same record as was before the Magistrate simplifies the procedural issue.

### Correctness of the Magistrate's Order

The indictment charges this defendant with conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) by forcibly stealing quantities of controlled substances, knowingly and intentionally possessing with intent to distribute those substances, 21 U.S.C. § 846 (count 2); possessing with intent to distribute a controlled substance, 21 U.S.C. §§ 812; 841(a)(1); 18 U.S.C. § 2 (counts 3 and 4); engaging in a continuing criminal enterprise, 21 U.S.C. § 848 (count 5); transporting in interstate commerce goods known to have been stolen, § 18 U.S.C. § 2314 (count 6); extortion, 18 U.S.C. §§ 1951 and 2 (counts 7 and 8); committing crimes of violence to further unlawful activity, 18 U.S.C. §§ 1952 and 2 (count 9); and conspiring to obstruct, delay and affect commerce by robbery, 18 U.S.C. § 1951 (counts 10 and 11).

The Bail Reform Act of 1984 became effective on October 12, 1984. *See* 18 U.S.C. §§ 3141 *et seq.* It provides that if a judicial officer finds probable cause to believe that the accused committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, a rebuttable presumption is created that no condition or combination of conditions other than detention will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e). The factors to be considered by the judicial officer in making a release or detention determination are (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g).

The length of time the defendant will be incarcerated before trial is not a factor listed in the statute. It cannot, however, be ignored without running afoul of constitutional due process and bail provisions.

In issuing the original detention order the Magistrate found that the charges contained in the indictment were supported by probable cause. The narcotics-related charges gave rise to the presumption that no condition or combination of conditions would reasonably assure the safety of any other person and the community. *Cf. United States v. Jessup,* 757 F.2d 378, 380 (1st Cir.1985) (refusing to pass upon constitutionality of Act's dangerousness ground for detention); *United States v. Leon,* 766 F.2d 77, 78 (2d Cir.1985) (detention approved without addressing constitutionality of rebuttable presumption because witnesses had been threatened by defendant).

Under the Act the proposition to be established is that there are no conditions of release that will "reasonably assure" that defendant will not engage in criminal activities pending trial. Senate Comm. on the Judiciary, S.Rep. No. 98–225, 98th Cong., 1st Sess. 19, U.S.Code Cong. & Admin. News 1984, pp. 3182, 3202. In establishing this presumption against bail Congress noted that "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with

major drug felonies ... pose a significant risk of pretrial recidivism." *Id.* at 20, U.S. Code Cong. & Admin.News 1984, at p. 3203.

■ The presumption shifts only the burden of coming forward, not the burden of persuasion. *United States v. Jessup,* 757 F.2d 378, 381–82 (1st Cir.1985); *cf.* Fed.R.Evid., R. 301 (shifting burden of coming forward in civil cases). The Congressional policy embodied in Rule 301 of the Federal Rules of Evidence applies *a fortiori* in a criminal case since the presumption operates to a defendant's disadvantage.

■ This defendant made no proffer to rebut the presumption, apart from the fact that he was in poor health, had removed far from the scenes of his alleged criminal conduct to his home in Orange County with his family, and had never been found guilty of a crime. This evidence, while slight, met the defendant's burden of coming forward. Under the circumstances, considering all the evidence, however, it was appropriate for the magistrate to have found that the Government sustained its burden of persuasion as to probable cause and danger to the community.

The crimes which are not narcotics-related and for which the Government has also established probable cause are "crimes of violence" as that term is defined in 18 U.S.C. § 16. The only evidence proffered by the defendant at the August 7th reconsideration hearing related to problems of proof as to one of the crimes with which the defendant is not charged, but with which he was alleged to have had some connection, and inconsistencies in testimony of a principal government witness, one Ferraro. That proffer—not in any way relating to the narcotics charges or to a number of crimes of violence with which the defendant is charged—does not undermine the Magistrate's original findings favoring the government.

Nevertheless, upon an independent review of the record before the Magistrate, I concur with his finding that the Government failed to establish by clear and convincing evidence—the standard of proof which I assume he was required to apply—that detention is necessary. Were I to be guided by the standard of 28 U.S.C. § 636(b)(1)(A), I would find on the record before the Magistrate that his order of release is neither clearly erroneous nor contrary to law.

My reasons for ordering release differ somewhat from the Magistrate's. He held that the defendant could conduct criminal activity from jail just as easily as he could from outside and so should be released. I respectfully disagree with this conclusion.

The statute does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order. Nor does the statute suggest that if a defendant has the ability to endanger the community vicariously from a prison cell though orders to his underlings detention is inappropriate. Leaders of criminal gangs who direct the commission of violent crimes by others can be detained prior to trial under the circumstances prescribed in the Act. A warden is in a position to inhibit criminal activities in jail by criminal overlords.

While the statute permits incarceration under these circumstances, it is unnecessary when bail conditions may be devised that will assure the public's safety. Such conditions appropriate to the instant defendant are set forth at the end of this memorandum.

### Delay in Trial

■ A substantial additional basis for my decision to confirm the Magistrate's decision to release the defendant is that the necessary delay in bringing the case to trial will require him to be incarcerated from 13 months to two years before a trial can be completed. Such a long period of preventive detention without a finding of guilt, based solely on possible danger to the public, is "anathema to American ideals of due process." R.B. McNamara, *Constitutional Limits on Criminal Procedure* 135 (1982); *see also, e.g.,* Verrilli, The Eighth

Amendment and the Right to Bail: Historical Perspectives, 82 Colum.L.Rev. 328, 359 (1982) ("eighth amendment right to bail precludes preventive detention").

In this case the government asks in effect that the defendant be sentenced to a long term of imprisonment on the theory that he is guilty as charged, without affording him the due process of law available at trial. *Cf. Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 2413, 81 L.Ed.2d 207 (1984) (upholding constitutionality of New York statute allowing preventive detention of juveniles in part because "the detention is strictly limited in time," with a maximum detention of 17 days). It should be recalled that the much criticized District of Columbia Court Reform and Criminal Procedure Act of 1970, which contained the first federal pretrial detention procedures in non-capital cases, permitted preventive detention for sixty days only. *See, e.g.,* Borman, The Selling of Preventive Detention 1970, 65 Nw.U.L.Rev. 879, 880 (1971) ("offends values which are at the very heart of our criminal justice system"); Tribe, An Ounce of Detention: Preventive Justice in the World of John Mitchell, 56 Va.L.Rev. 371, 377 (1970) ("sharp break from our legal traditions"); Hickey, Preventive Detention and the Crime of Being Dangerous, 58 Geo.L.J. 287, 316 (1969) ("Draconian," "highly undesirable").

Assuming for the purpose of this case that some form of preventive detention is constitutional, the fact that in a complex case trial may not begin for many months must be considered if the statute is to withstand constitutional attack. The narrow parameters of the Speedy Trial Act, while not decisive, suggest the strong congressional policy in favor of a speedy trial for the incarcerated. That Act should be read together with the statutory bail provisions and the Constitution in arriving at a sound statutory construction.

Pretrial detention of those believed to be dangerous was the product of relatively recent administration policy. *Compare,* Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va.L.Rev.

1223 (1969) *with* Ervin, Jr., The Legislative Role in Bail Reform, 35 Geo.Wash.L.Rev. 429, 444-46 (1967). Attorney General John N. Mitchell, a chief proponent of the plan, justified it on the assumption that the period of detention would be no longer than 60 days. Mitchell, *supra,* at 1223, 1233, 1239.

Two arguments can be made against considering the probable length of the period of detention in determining whether an accused can be detained prior to trial because of his dangerousness. First, it may be argued that defendants have been held for long periods before trial on the traditional grounds of danger of flight and indictment on a capital charge. The answer to this point is that old abuses do not justify entirely new abuses. Whatever basis there may be for this traditional practice cannot excuse pretrial detention on a basis so contrary to our criminal jurisprudence as using defects in character to predict violence. Our criminal law has generally set its face against the inference prior to conviction of bad man therefore bad act. *Cf.* Federal Rule of Evidence 404. Moreover, Congress in meeting its constitutional responsibilities has attempted to reduce pretrial incarceration even on traditional grounds. This policy is reflected in the Speedy Trial Act and the Bail Reform Act. *See, e.g.,* Ervin, Jr., The Legislative Role in Bail Reform, 35 Geo.Wash.L.Rev. 429 (1967); 18 U.S.C. §§ 3041 *et seq.,* 18 U.S.C. §§ 3161 *et seq.*

The second argument against implying a time limit in any provision permitting pretrial detention based on dangerousness is that the Speedy Trial Act itself provides adequate guarantees against delay. *See* 18 U.S.C. §§ 3161 *et seq.;* Fed.R.Crim.Proc., Rule 50(b). In light of modern criminal practice in a large urban setting, this argument is not persuasive. There are so many exclusions that delays for months or even years are possible. *See* 18 U.S. § 3161(h) (listing nine different grounds); *see also* standard Eastern District form order of Excludable Delay (listing thirty reasons plus sub-reasons).

The problem is illustrated by the instant case. The indictment was filed April 22,

1985. The government has not yet responded to motions made by defendants. After the motions have been argued on the scheduled return date of September 23, the already overburdened trial judge who has many criminal cases and hundreds of civil cases on his docket will need time to decide them. Further motions are likely. Setting a trial date will be extremely difficult because the trial schedules of twenty-five busy attorneys and the judge need to be considered, particularly since it is predicted the trial will take some four months. The attorneys involved are in demand in other federal and state courts. A hard-nosed unrelenting attitude by the trial judge that attorneys must be retained who will be available when he is ready does serious damage to the right to counsel of defendant's choice. Severances are possible but they exacerbate the situation because instead of tying up the trial judge for four months, he becomes unavailable for other trials for a much longer period.

In this kind of complex case, it is thus unrealistic to rely—as the Court of Appeals, the Department of Justice and Congress appear to have done—wholly on the Speedy Trial Act to protect against long pretrial incarceration. In *United States v. Leon*, 766 F.2d 77 (2d Cir.1985), an appeal from a detention order, the court when informed that no trial date had yet been set relied upon the priority required for detention cases and the right to a trial within seventy days "subject to certain periods of excludable delay." *Id.* at 78 n. 1. The Senate Report on the Comprehensive Crime Control Act of 1983 noted:

One element of the District of Columbia Code Provision not carried forward ... is the 60 day limitation which ... specifically requires that priority be given to a case in which the defendant is detained, and also requires that his trial must, in any event, occur within 90 days, subject to certain periods of excludable delay.... These current limitations [in the Speedy Trial Act] are sufficient to assure that a person is not detained pending trial for an extended period of time.

Report of the Committee on the Judiciary, United States Senate on S.1762, Comprehensive Crime Control Act of 1983, Sen. Rep. No. 98–225, 98th Cong., 1st Sess., at 22 n. 63. *See also* United States Dept. of Justice, Handbook on the Comprehensive Crime Control Act of 1984 at 17 (Dec. 1984) ("because the federal pretrial detention provisions are circumscribed by the Speedy Trial Act, the defendant will be afforded, within a limited period of time, a trial at which all necessary procedural protections will be provided").

Congress will undoubtedly need to make some technical corrections in the Comprehensive Crime Control Act of 1984. Perhaps it may also wish at the same time to reconsider the relation between pretrial detention and the Speedy Trial Act in complex cases. One suggestion is that a catchall phrase such as "interests of justice" be added to the factors the judicial officer considers when setting bail.

No one would argue that those accused of criminal conduct should be treated more leniently if they engage in complex crimes and extensive patterns of criminality involving many associates. Nevertheless, the court must, it is submitted, consider the time a defendant will probably be incarcerated in determining whether he should be detained before trial. Dangerousness, procedural devices such as severance, priorities in trial of detention cases, conditions of bail and other relevant factors in addition to probable length of pretrial incarceration have to be weighed. The largest discretion must be afforded the magistrate and district judge to consider all relevant factors, including the period of possible incarceration. As Attorney General Mitchell pointed out in his justification of pretrial detention, due process "requirements are those of reasonableness—the restraints imposed on the liberty of an accused must be reasonable when balanced against society's acknowledged interest in preventing commission of further crimes while the defendant is awaiting trial." Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va.L.Rev. 1223, 1234–35 (1969).

The government may move to sever or to expedite the trial if it wishes to incarcerate before trial. It has done neither in this case. The prospective delay in trial is largely attributable to its choice of such a complex indictment with joinder of so many parties and crimes. The defendant should not be forced to pay the price of this prosecutorial decision by forfeiture of his freedom.

The Magistrate's order is affirmed. Mr. Colombo is ordered released.

### *Additional Bail Conditions to Protect Public*

In the exercise of my general powers to fix and modify bail, I order additional conditions of release to protect the community. *See* 18 U.S.C. § 3142(a)(2)(c). Mr. Anthony Colombo shall not associate or communicate with any other named defendant prior to trial except as his lawyer certifies is necessary to prepare a defense. He may not appear at the Eldoro Catering Company, his former place of employment and the alleged center of criminal activities. He may not commit any crime. He may not directly or indirectly threaten a witness or cause harm to anyone named in the indictment or to any other person. He must report by telephone on Mondays and Fridays to Pretrial Services. He must surrender his passport. He may not leave Orange County except to attend court or consult his attorney. He must post the bond required by the Magistrate.

Absent a stay, the defendant who is ordered released from custody should be free pending appeal. *See* 18 U.S.C. §§ 3141(c); 3145(c); 3731. In this case the serious questions of law presented, plus the fact that the defendant is now in custody, warrant continuance of the status quo pending a decision on a further stay by the Court of Appeals or other action by the judge in charge of the case. Accordingly, the order of release is stayed until 12:00 noon on August 29 to permit the government to seek a further stay from the Court of Appeals.

SO ORDERED.