\* 18 U.S.C. § 3145(c) (1984) requires the court to promptly consider an appeal from a detention order. On December 12, 1985 this court issued an order affirming the district court's decision to detain the defendant pending his trial. We now issue our opinion detailing the reasons for that decision.

UNITED STATES of America, Plaintiff-Appellee,

v.

Leonel PORTES, Defendant-Appellant.

No. 85–2459.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1985.

Decided Dec. 12, 1985 \*.

Opinion March 10, 1986.

Max Cohen, Cohen & Thiros, Merriville, Ind., for defendant-appellant.

Samuel Rosenthal, Washington, D.C., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Pursuant to the provisions of the Bail Reform Act of 1984 (Act), 18 U.S.C. §§ 3142–3145, a United States magistrate found that no condition or combination of conditions would reasonably assure the safety of the community or the appearance of Mr. Portes at the court proceedings to dispose of the criminal charges pending against him. The magistrate therefore ordered him detained pending trial. After reviewing the record *de novo*, the district court affirmed the detention order. On appeal, Mr. Portes argues that the Bail Reform Act of 1984 violates the fifth and eighth amendments to the Constitution. He also argues that, even if the Act is constitutional, the magistrate and the district court did not apply it properly in this case. We hold that the Bail Reform Act of 1984 does not violate either the fifth or eighth amendment and we affirm the decision to detain Mr. Portes pending his trial.

## I

### FACTS

On July 19, 1985, a grand jury returned an indictment against Leonel Portes and approximately thirty other members of an alleged drug trafficking network.[1] The indictment charged Mr. Portes with eight counts including conspiracy, distribution of narcotics and illegal use of a communication facility. At Mr. Portes' initial hearing on July 23, 1985, the government requested a detention hearing pursuant to 18 U.S.C. § 3142. The statute gives the court the authority to order the defendant detained pending trial if, after a hearing, the court determines that no condition or combination of conditions will reasonably assure the safety of the community and the appearance of the defendant.

On July 25, 1985, Mr. Portes appeared before a United States magistrate. The government offered the testimony of two witnesses. Elaine Harris, an agent with

---

1. At oral argument, Mr. Portes' attorney agreed that it would be fair to characterize the indictment as alleging that Mr. Portes was a mid-level member of an organization engaged in the distribution of narcotics.

the Drug Enforcement Administration, testified that, on July 23, 1985, pursuant to a search warrant, agents searched Mr. Portes' home. The agents found approximately five thousand dollars, three handguns, numerous pieces of identification for various individuals and one hundred thousand dollars worth of jewelry. Ms. Harris also testified that Mr. Portes was not an American citizen but had emigrated from Havana, Cuba. Finally, Ms. Harris testified that, between March 20, 1985 and July 12, 1985, the Drug Enforcement Administration intercepted twenty to twenty-five phone conversations in which Mr. Portes discussed narcotics distribution.

The government also called Fernando Villicana, a narcotics investigator for the East Chicago Police Department. Officer Villicana testified that a previously reliable informant called him and told him that, once Leonel Portes was free on bond, he "would skip bond and go and be sent to another Latin American country" and that certain police officers and agents might be subject to reprisal. Detention Hearing Tr. at 24. Mr. Portes offered no evidence at the detention hearing. On July 26, 1985, the magistrate ordered Mr. Portes detained pending trial.

In reaching his decision to detain Mr. Portes, the magistrate determined that the government had established probable cause to believe that the defendant had committed an offense under the Controlled Substances Act, 21 U.S.C. § 801 et seq., punishable by a prison term of ten years or more. This determination permitted the court to consider the statutorily-created rebuttable presumption that no condition or combination of conditions will assure appearance and ensure safety to the community. 18 U.S.C. § 3142(e). The magistrate relied on this presumption and concluded that Mr. Portes had presented no evidence to rebut it.

At a hearing on his motion to reconsider, Mr. Portes produced some evidence to rebut the presumption. He testified that he had lived in northern Indiana for four and one-half years, that he was managing a lounge and selling jewelry and that he lived with his girlfriend and their two children. Mr. Portes also submitted immigration papers establishing that he was legally within the country. The magistrate considered the new evidence but affirmed his detention order.

The Act establishes a two-tier review process for detention orders issued by magistrates. 18 U.S.C. § 3145 (1984). The first level of review occurs in the court having original jurisdiction over the offense. In this case, the district court made a *de novo* determination that the government had established probable cause to believe that Mr. Portes had committed an offense giving rise to the rebuttable presumption. The court also determined that the government had met its burden of establishing that no condition or combination of conditions on release could assure either Mr. Portes' appearance or the safety of the community. Therefore, on September 9, 1985, the district court affirmed the magistrate's detention order.

The second tier of review brings that order to this court. Applying the prudential principle that courts should not unnecessarily decide constitutional issues, we will turn first to the application of the Act to Mr. Portes. Only if we determine that the Act has been properly applied to detain Mr. Portes must we address its constitutionality. *See United States v. Leon,* 766 F.2d 77, 78 (2d Cir.1985); *United States v. Orta,* 760 F.2d 887, 889 n. 8 (8th Cir.1985).

II

APPLICATION OF THE BAIL
REFORM ACT

Mr. Portes argues that the court improperly exercised its power to detain in this case because the government failed to meet the requirements imposed by section 3142. However, we believe that the district court properly applied the Act and the government met its statutorily imposed burdens. This conclusion is based on the resolution of several important issues surrounding

the application of the Act and the role of this court in reviewing detention orders.

STANDARD OF APPELLATE REVIEW

■ Initially, it is necessary to determine the standard by which this court ought to review the decisions of the magistrate and the district court. While providing for appellate review, the statute does not indicate the standard which this court must employ. Three alternatives have been articulated by other circuits. The Second and Fourth Circuits apply the "clearly erroneous" standard. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985); *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985).[2] The Third, Sixth, Eighth, Ninth, and Eleventh Circuits require an independent review of the entire record to determine if the detention decision was correct. *United States v. Delker*, 757 F.2d 1390, 1399–1400 (3d Cir.1985); *United States v. Hazime*, 762 F.2d 34, 36–37 (6th Cir.1985); *United States v. Maull*, 773 F.2d 1479, 1487 (8th Cir.1985); *United States v. Montamedi*, 767 F.2d 1403, 1406 (9th Cir.1985); *United States v. Hurtado*, 779 F.2d 1467, 1472 (11th Cir.1985). Finally, the First and Fifth Circuits, without extended discussion, looked to the 1966 version of the Act and adopted the "supported by the proceedings below" standard contained in that act. *United States v. Jessup*, 757 F.2d 378, 387–88 (1st Cir.1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir.1985).[3]

We join the majority of the circuits in adopting the so-called "independent review" standard. In our view, it most accurately reflects the congressional intent. As the Eleventh Circuit noted in *Hurtado*, 779 F.2d at 1472:

When it adopted the 1984 Act, Congress repealed the pretrial review provisions of Section 3147(b) and made no provision for the standard of appellate review of detention decisions in either pre- or post-trial settings save to say that appellate procedures were to be those "set forth in Rule 9 of the Federal Rules of Appellate Procedure." S.Rep. No. 225, 98th Cong., 1st Sess. 1, 29–30 & n. 92 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3212–13 & n. 92. Fed.R.App.P. 9(a) provides that, after the trial court reaches a determination as to release, it must set forth "in writing the reasons for the action taken" and the appeal shall be effected with the aid of "such papers, affidavits, and portions of the record as the parties shall present. The court of appeals or a judge thereof may order the release of the appellant pending the appeal."

The very encompassing nature of this inquiry, and especially the requirement that the trial court set forth in some detail its reasoning, suggests that the inquiry is to be probing. Further, the language of the Rule apprehends that either party may expand the record, permitting consideration by the appeals court of evidence not even presented to the trial court. Fed.R.App.P. 9(a); *Bayko*, 774 F.2d at 519; *Maull*, 773 F.2d at 1487; *Delker*, 757 F.2d at 1399. The affirmative congressional decision to repeal the deferential standard of the 1966 Act is also instructive.

This approach is also most compatible with the traditional approach of the Justices of the Supreme Court when acting on applications for bail in post-conviction settings.

---

**2.** Both *Chimurenga* and *Williams* were decided shortly after the new Act became effective. The court in *Chimurenga*, 760 F.2d at 405, followed the *Williams* analysis. Both courts adopted the "clearly erroneous" standard without the benefit of the analysis and arguments provided by other circuits in subsequent cases. The *Williams* court noted that it was forced to review the detention order "hard on the heels of the passage of the 1984 Act." *Williams*, 753 F.2d at 329.

**3.** The 1966 version of the Act provided that the court should affirm the detention order if it is "supported by the proceedings below." *See United States v. Golding*, 742 F.2d 840, 841 (5th Cir.1984); 18 U.S.C. § 3147(b) (1966). Since the *Jessup* decision, the First Circuit has decided that review of an order denying bail pending appeal requires the appellate court to make an independent determination. *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir.1985). In *Bayko*, the court raised at least some doubts about the standard of review applied in *Id.* at 518 n. 3.

*See, e.g., Mecom v. United States,* 434 U.S. 1340, 1341, 98 S.Ct. 19, 20, 54 L.Ed.2d 49 (Powell, Circuit Justice 1977); *accord Truong Dinh Hung v. United States,* 439 U.S. 1326, 1328, 99 S.Ct. 16, 17, 58 L.Ed.2d 33 (Brennan, Circuit Justice 1978); *Harris v. United States,* 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (Douglas, Circuit Justice 1971); *Sellers v. United States,* 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (Black, Circuit Justice 1968); *Reynolds v. United States,* 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (Douglas, Circuit Justice 1959).

In adopting this standard of appellate review for pre-trial detention orders, we do not abandon the traditional deference owed to the factual findings of the trial court. Absent a showing that they are clearly erroneous, such findings must be accepted. "This court does not conduct evidentiary hearings and hear witnesses, and we will not disturb the factual findings of the district court and magistrate in pre-trial hearings unless we determine those findings to be clearly erroneous." *Hazime,* 762 F.2d at 37. On the other hand, the determination as to whether the defendant will flee or pose a danger to the community if released is a judgmental function requiring the weighing of the factors set forth in the statute. *See* 18 U.S.C. § 3142(g). In assessing the facts against these criteria, we are not restricted by the "clearly erroneous" standard and must engage in an "independent review" of the case. However, even here, we must remember that the magistrate and often the district judge were, in all probability, much closer to the case than this court. They had the opportunity to observe the defendant, his alleged confederates, if any, his family, and those with whom he will probably associate if released. A prudent appreciation for the importance of such an opportunity in making the statutorily-directed determination requires that we give great weight to the assessment of those judicial officers. *See United States v. Diaz,* 777 F.2d 1236, 1237 (7th Cir.1985).

## REBUTTABLE PRESUMPTION

Both the magistrate and the district judge relied on the statutorily-created rebuttable presumption that no condition or combination of conditions would be sufficient to protect the community and guarantee Mr. Portes' presence at trial. 18 U.S.C. § 3142(e).[4] We must, therefore, determine whether the facts supported the court's use of the presumption and, if so, whether the

---

4. The magistrate and the district court concluded that the government had established probable cause that Mr. Portes had committed an offense for which a maximum term of ten years or more is prescribed in the Controlled Substances Act. Pursuant to such a finding, the court applied the rebuttable presumption contained in section 3142(e). 18 U.S.C. § 3142(e) provides:

Detention. If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial. In a case described in (f)(1), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

(1) the person has been convicted of a Federal offense that is described in subsection (f)(1), or of a State or local offense that would have been an offense described in subsection (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

(2) the offense described in paragraph (1) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later.

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code.

court correctly applied the presumption in its analysis.

■ We find that the evidence presented at the detention hearing was sufficient to establish probable cause that Mr. Portes had committed an offense in violation of the Controlled Substances Act which carried a potential penalty of ten or more years in prison.[5] Agent Harris' testimony, although hearsay, was properly considered in the court's determination of probable cause. 18 U.S.C. § 3142(f)(2)(B); *United States v. Acevedo-Ramos,* 755 F.2d 203, 208 (1st Cir.1985). The large quantity of money and dangerous weapons found in Mr. Portes' home, combined with the intercepted telephone conversations linking Mr. Portes to the distribution of narcotics, established probable cause.[6] The magistrate and the district court properly determined that the government could use the rebuttable presumption to help make its case.

■ We turn now to the effect this presumption has on the court's analysis. We join the rest of the circuits which have considered this issue in concluding that the presumption shifts the burden of production but not the burden of persuasion to the defendants. *Jessup,* 757 F.2d at 381–89; *Chimurenga,* 760 F.2d at 405; *Fortna,* 769 F.2d at 251. This approach is consistent with the presumption of innocence enjoyed by a criminal defendant. Under the *Jessup* approach, the court may factor the presumption into its determination of whether the government has established that no

condition or combination of conditions would reasonably [7] assure appearance and ensure the safety of the community. As this court has noted in *United States v. Dominiguez,* 783 F.2d 702, 707 (7th Cir. 1986), the presumptions contained in section 3142(e), including this presumption:

> do not disappear when rebutted, like a "bursting bubble" presumption, nor do they actually shift the burden of persuasion to the defendant. They are "rebutted" when the defendant meets a "burden of production" by coming forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is "rebutted".... Use of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g).

With these principles in mind, we now turn to the facts of this case.

## DANGER TO THE COMMUNITY

■ The statute requires the government to prove by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community. 18 U.S.C. § 3142(f)(2)(B); *Chimurenga,* 760 F.2d at 405. The statute also sets forth specific factors for the judicial officer to consider. 18 U.S.C. § 3142(g).[8] Here,

---

5. If convicted on all counts, Mr. Portes faces a possible fifty-four year prison sentence.

6. On appeal, Mr. Portes does not vigorously contest that the government had probable cause.

7. The conditions need not guarantee appearance but they must reasonably assure appearance. *United States v. Orta,* 760 F.2d 887, 890–92 (8th Cir.1985).

8. Section 3142(g) provides:

Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on pa-

the government relies on several factors to meet its burden. First, it relies on the statutorily-created presumption that, if there is probable cause to believe that the defendant "committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142. In creating this presumption, Congress determined that the type of drug trafficking alleged in this indictment is a serious danger to the community. Especially significant is the drug network's ability to continue to function while the defendant awaits trial. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 12, *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3195–96. In this case, Mr. Portes is alleged to be a member of a large drug trafficking network. Second, agents found three dangerous weapons: a forty-five caliber handgun, a three-fifty-seven magnum and a two-shot derringer at Mr. Portes' home. Detention Hearing Tr. at 3. This unrebutted evidence as well as the informants' statements that some officers or agents might be the subject of reprisals constituted clear and convincing evidence that no conditions would ensure the safety of the community.

This court has held that a finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial. *United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985). Therefore, at this point, we could affirm the court's application of the statute to detain Mr. Portes. However, for the sake of completeness, we will review the magistrate's and district court's decisions that Mr. Portes also presented a risk of flight.

RISK OF FLIGHT

 The government also bears the burden of proving that no set of conditions will reasonably assure Mr. Portes' appear-

ance at the required times. The statute does not establish the quantum of proof by which the government must establish this risk of flight. We adopt the position taken by the other circuits that congressional silence means acquiescence in the traditional preponderance of the evidence standard. *Chimurenga,* 760 F.2d at 405–06; *Orta,* 760 F.2d at 891 n. 20.[9] The statute directs the judicial officer to consider the same factors as those considered on the danger to the community issue. 18 U.S.C. § 3142(g).[10] Once again the government was permitted to utilize the rebuttable presumption based on the congressional determination that those involved in narcotics organizations often present a high risk of flight. The government also relied heavily on the statement of a reliable informant that Mr. Portes was likely to flee. In addition, the government suggested that the availability of phony identification and large amounts of cash, as well as Mr. Portes' lack of ties to the community, made it impossible for the court to establish a set of conditions which would reasonably assure his presence.

Initially, Mr. Portes presented no evidence to rebut the government's argument. At a hearing on a motion to reconsider, he submitted evidence of his ties to the community. He had a job and proper immigration papers. He lived with his girlfriend and their two children. The magistrate and the district judge both weighed the evidence and concluded that the government had met its burden. We agree. Mr. Portes offered some evidence. It was not, however, sufficient to rebut the congressionally-created presumption, the strong informant's testimony and the other evidence suggesting that Mr. Portes might flee the jurisdiction. The government established by a preponderance of the evidence that no conditions would reasonably assure Portes' presence at trial.

role, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

9. We are aware that the Ninth Circuit has apparently adopted the slightly higher standard of "clear preponderance." *United States v. Montamedi,* 767 F.2d 1403, 1407 (9th Cir.1985).

10. *See supra* note 8.

We hold that the magistrate and the district judge correctly applied the Bail Reform Act of 1984. Consequently, we must now consider whether the application violates the Constitution.

## III

## CONSTITUTIONALITY OF BAIL REFORM ACT

Mr. Portes argues that the Bail Reform Act of 1984 violates his fifth and eighth amendment rights.[11] We join all the other courts in the country that have either implicitly or explicitly held that the Bail Reform Act does not violate the fifth or eighth amendment. No court has held the Act unconstitutional.

## EIGHTH AMENDMENT

■ The eighth amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Mr. Portes argues that, if this clause is to have any meaning, it must create a constitutional right to bail. We do not agree. In *United States v. Edwards*, 430 A.2d 1321 (D.C.1980) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982),[12] the court carefully analyzed the history of bail in England and the United States. The court concluded that "neither the historical evidence nor contemporary fundamental values implicit in the criminal justice system requires recognition of the right to bail as a 'basic human right,' which must then be construed to be of constitutional dimensions." *Id.* at 1331 (citations omitted); *see*

*United States v. Freitas*, 602 F.Supp. 1283, 1287 (N.D.Cal.1985); *United States v. Kouyoumdjian*, 601 F.Supp. 1506, 1511 (C.D.Cal.1985) (following *Edwards* ).

The defendant relies on *Hunt v. Roth*, 648 F.2d 1148, 1157 (8th Cir.1981), *vacated as moot sub nom. Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). In *Hunt*, the court held that the eighth amendment necessarily implies that unreasonable denial of bail is prohibited. The holding in *Hunt* is not inconsistent with our holding today. The *Hunt* court recognized that "Congress and the states may reasonably legislate as to the right to bail for certain offenses 'provided the power is exercised rationally, reasonably, and without discrimination.' " *Id.* at 1161 (citations omitted). The *Hunt* court found the fatal flaw of the Nebraska statute was the fact that it created an *irrebuttable* presumption that all sex offenders should be detained pending trial. *Id.* at 1164. By contrast, the Bail Reform Act creates only a *rebuttable* presumption. The legislative history indicates that Congress carefully considered the reasons for the presumption. The rebuttable presumption, as it relates to crimes committed in violation of the Controlled Substances Act, is neither arbitrary nor unreasonable. The Supreme Court has already recognized that Congress has the power to deny bail in capital cases. *Carlson v. Landon*, 342 U.S. 524, 545, 72 S.Ct. 525, 536, 96 L.Ed. 547 (1952). The Bail Reform Act is another congressional determination that the court has the power to deny bail under certain circumstances. This decision does not violate the eighth amendment.

11. At oral argument, Mr. Portes' counsel argued that Portes' detention in Chicago approximately one hour from his attorney's office combined with the fact that Mr. Portes does not speak English make it impossible to develop an effective defense. He argued that the pre-trial detention denies Mr. Portes effective assistance of counsel. If Mr. Portes is having difficulty meeting with his attorney, he may file a motion asking the district court to reconsider the detention order at any time or otherwise provide for improved attorney contact. The record con-

tains no basis for this court to determine whether detention in Chicago is denying Mr. Portes effective assistance of counsel. The possibility that, in some case, the detention might present difficulties for a defendant's attorney does not render the statute unconstitutional.

12. In *Edwards*, the court held the District of Columbia bail statute constitutional. Congress used the District of Columbia statute as a model in developing the Bail Reform Act of 1984.

## FIFTH AMENDMENT ·

Mr. Portes argues that the Bail Reform Act violates the fifth amendment for three reasons. First, the pre-trial detention is punishment prior to an adjudication of guilt. Second, the procedures established · in the statute do not protect the defendant's liberty interest. Third, the length of detention prior to trial violates the defendant's right to a speedy trial.

■ The fifth amendment prohibits punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979). Not all detention is considered punishment. Whether the burden on the defendant's liberty is impermissible punishment or acceptable regulation depends on the purpose of the restraint. *Id.* at 538–39, 99 S.Ct. at 1873–74. In *Edwards*, 430 A.2d at 1332–33, the court looked to the legislative history of the District of Columbia statute and determined that the pre-trial detention was intended to protect the safety of the community, not to promote retribution or deterrence. The court found that pre-trial detention to protect the community was not punishment. This analysis was incorporated into the legislative history of the Bail Reform Act. S.Rep. No. 225, 98th Cong., 2d Sess. 8, *reprinted in* 1984 U.S. Code Cong. & Ad. News at 3182, 3191. We join those courts which have considered the question and hold that the pre-trial deten-

tion permitted by the Bail Reform Act of 1984 does not violate the fifth amendment's prohibition against punishing a pre-trial detainee. *See Jessup*, 757 F.2d at 385; *Freitas*, 602 F.Supp. at 385; *Kuoyoumdjian*, 601 F.Supp. at 1511.

■ Mr. Portes next argues that the procedures established in the statute do not adequately protect his liberty interest. Detention under the Act implicates a liberty interest entitled to some due process protections. *United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir.1985). Due process is a flexible concept which requires different procedural protections for different degrees of intrusion on life, liberty or property interests. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The full panoply of rights required to ensure due process at trial is not necessary in all proceedings. The Act provides for some procedural safeguards. The detention hearing must be held immediately upon the defendant's initial appearance; it may be continued for no more than five days without good cause. Although traditional rules of evidence do not apply at the hearing, the defendant has a right to counsel, a right to testify, a right to call witnesses, and a right to cross-examine witnesses. 18 U.S.C. § 3142(f).[13] We agree with the other courts which have concluded that these procedures adequately protect the liberty interest at stake in this case. *Delker*, 757 F.2d at 1397; *Jessup*, 757 F.2d at 386; *Freitas*, 602 F.Supp. at

---

**13.** Section 3142(f) provides:

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days. During a continuance, the person shall be detained, and the judicial officer, on motion of the attorney for the Government or on his own motion, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether he is an addict. At the hearing, the person has the right to be represented by counsel, and, if he is financially

unable to obtain adequate representation, to have counsel appointed for him. The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing.

1292; *United States v. Hazzard*, 598 F.Supp. 1442, 1453–54 (N.D.Ill.1984).

■ Finally, Mr. Portes argues that the potential length of his detention violates due process. He relies on the district court's opinion in *United States v. Colombo*, 616 F.Supp. 780 (E.D.N.Y.1985). There, the district court considered the length of pre-trial delay an important factor in determining that detention was improper. Mr. Portes argues that this case should be remanded to require the district court to consider the fact that there are numerous defendants and pre-trial motions which could create a long period of detention before trial. We recognize that, at some point, the length of delay may raise due process objections and we urge that district courts expedite the trials of those detained pending trial. However, as the Second Circuit noted in its review and reversal of the *Colombo* decision, at this stage of the proceedings, a determination that the length of detention is impermissible "both as a statutory and constitutional matter, is premature." *United States v. Colombo*, 777 F.2d 96, 100 (2d Cir.1985).[14]

## CONCLUSION

We hold that the magistrate and the district court properly applied the 1984 Bail Reform Act and that the Act does not violate the fifth or eighth amendment. The order detaining Mr. Portes pending his trial is affirmed.

AFFIRMED.

---

**14.** A defendant may at any time request that the district court reconsider the detention order. If Mr. Portes believes that the pre-trial delays are unreasonable he may seek reconsideration. We express no opinion as to the length of detention which would be constitutionally impermissible.