**UNITED STATES of America**

v.

**James NICHOLAS.**

**No. 90 CR 87–16.**

United States District Court,
N.D. Illinois, E.D.

Oct. 23, 1990.

dant's receipt of the first pleading, order or other paper that establishes the conditions for removability.

David D. Buvinger, Mitchell A. Mars, Asst. U.S. Attys., Chicago, Ill., for U.S.

William H. Theis, Chicago, Ill., for James Nicholas.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

On February 6, 1990 defendant James Nicholas was indicted along with nineteen co-defendants. Nicholas was charged with conspiracy to conduct an illegal gambling business, conducting an illegal gambling business and criminal contempt of court. Nicholas was released on bail pursuant to certain conditions, the first of which was that Nicholas was not to commit a federal, state or local crime during the period of his release. On May 19, 1990, Nicholas was arrested by Chicago police officers and charged with gambling in violation of Ill. Rev.Stat. ch. 38, § 28–1 and with being the keeper of a gambling house in violation of Ill.Rev.Stat. ch. 38, § 28–3.[1] The government moved to revoke defendant's bond and Magistrate Rosemond, after holding a hearing, granted the government's motion.

At the hearing before the Magistrate, Officer Lloyd testified that an unidentified

---

1. On September 10, 1990, defendant Nicholas submitted a supplementary filing in which he stated that the gambling charges pending against him in state court had been dismissed. However, the government informed the court that these charges were dismissed because a superseding indictment was returned which upgraded the charges against defendant Nicholas to felony counts.

undercover police officer observed defendant Nicholas participating in a wagering game at Hellas Cafe in Chicago on two different occasions before his arrest. On one occasion the undercover officer allegedly saw people who were playing Greek gin rummy giving money to the defendant, who put the money in a "cut box", or a receptacle for holding the house's percentage of winnings.

Officer Lloyd also testified that he personally received an anonymous tip on May 11, 1990 that a "big money" card game was being played at the Hellas Cafe. Officer Lloyd conducted his own surveillance on May 14 and 16, 1990 and observed gambling through the window of the cafe. Officer Lloyd then procured a search warrant and, along with other police officers, executed the warrant on May 19, 1990. At the time of the raid, defendant Nicholas was at the cafe and was seen going into another room when the officers were trying to gain entrance to the cafe. The officers recovered approximately $11,000 from persons on the premises, about one-third of which was recovered from defendant Nicholas. The officers also recovered an additional $1200 from the "cut box", playing cards, score sheets and a mobile telephone.

Under 18 U.S.C. § 3148, a defendant alleged to have committed a crime while on release should be held without bond if the court finds that there is probable cause to believe the defendant committed a crime and that there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the community. Based on the testimony referred to above, the Magistrate found there was "more than sufficient probable cause to believe that defendant Nicholas ... committed a state crime ..." Magistrate's Report at 5. The Magistrate went on to find that "the defendant's circumstances with respect to employment, family ties, and community ties ... were insufficient to prevent the defendant from continuing to engage in criminal behavior" and therefore the defendant must be detained pending trial. *Id.*

Defendant Nicholas appealed the Magistrate's decision to this court and the court held an evidentiary hearing. At the *de novo* hearing, defendant Nicholas called several witnesses who stated that they were present at Hellas Cafe the night of the raid and that they saw no card games for money and no taking of money by defendant Nicholas. However, the witnesses were difficult to understand and therefore their testimony was unclear. Also, just because the witnesses did not see defendant Nicholas or others gambling does not mean that gambling did not occur that night. The restaurant was crowded the night of the raid and as a result the witnesses may not have noticed gambling. Furthermore, the witnesses were not present the entire night and since defendant Nicholas was allegedly walking back and forth between the card game and the back rooms, the witnesses may have simply missed seeing him "taking a cut" from the game. Finally, the court notes that one of the defense witnesses was also arrested during the May 19 raid and therefore it was in his own interest to testify that gambling did not occur that night. For all these reasons, the court does not find the defense witnesses' testimony credible.

Seemingly in response to the defendant's decision to call more witnesses at the *de novo* hearing, the government called the undercover police officer who allegedly witnessed Nicholas "taking a cut" from the Greek gin rummy game prior to his arrest. Just before calling the officer to the stand, the government stated that the officer would wear a hood over his head while testifying because he is the only investigative officer who can converse in Greek and effectively investigate crime in the Greek restaurant community and therefore it was necessary to conceal his identity. Because the hearing had been postponed several times due to the unavailability of defense counsel, the court allowed the officer to testify in this unprecedented fashion, but the court warned that the officer's testimony would be stricken if the government could not present sufficient legal support for such a procedure.

■ "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Accordingly, hearsay evidence may be considered. *See United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1985); *United States v. Arvanitis*, 667 F.Supp. 593, 595 (N.D.Ill.1987). Under these loose evidentiary standards the court could consider the testimony of the hooded police officer and just accord it less weight. However, the court refuses to consider the officer's in-court testimony at all. Instead, the court will only consider Agent Lloyd's account of the undercover officer's observations given at the hearing before Magistrate Rosemond and will accord this testimony the weight due hearsay evidence in the context of a detention hearing.

■ The government presumably presented the officer with his face hidden at the *de novo* hearing to bolster the hearsay testimony about the officer's observations presented by Agent Lloyd at the hearing before Magistrate Rosemond. However, if the government intended to use such an unprecedented tactic, the government should have notified the court in advance and presented the court with authority for using such a procedure. As it turns out, the government has not been able to cite any authority expressly approving this practice. Had the court known this in advance, the court would have barred the officer from testifying with a hood. Because the officer hid his identity, the scope of cross-examination of the officer and the scope of re-direct examination of the defense witnesses were limited in certain significant respects. For example, the defense witnesses could not state whether they observed the testifying officer at Hellas the night of the raid because they did not know what the testifying officer looked like. Such restriction of the redirect examination of defense witnesses reveals a critical flaw in the use of hooded witnesses.

The court also disdains the use of this type of testimony because it smacks of unfairness. If a party wants to gain the added benefit of having a live witness, as opposed to presenting less persuasive hearsay testimony, the party must make the witness available for comprehensive cross-examination. Although there is no constitutional right to confront witnesses at a detention hearing, a court still has discretion under Federal Rule of Evidence 611 to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of the truth." The court finds that given the restrictions on cross-examination and re-direct examination that result from using hooded witnesses, and given the more basic unfairness of the practice, hiding witnesses' identities is not an "effective" method for "ascertainment of the truth." Therefore, the court will not consider the in-court testimony of the hooded police officer.

■ Notwithstanding the fact that the court gives no weight to the testimony of the hooded officer presented at the *de novo* hearing, the court finds there is probable cause to believe defendant Nicholas committed the crime of gambling while out on bail. In order to find probable cause that defendant committed a crime, the court need only find that there is a "fair probability" that Nicholas was in fact gambling. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The testimony of Agent Lloyd relating to the undercover officer's observations given before the Magistrate, along with Agent Lloyd and Agent Herion's first-hand accounts of defendant's actions and the evidence seized the night of the raid is sufficient to show a "fair probability" that defendant was gambling.

"If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition of combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). Defendant Nicholas only points to the fact that he immediately reported his arrest to his pretrial services officer to show that he is

not a threat to the community. This is not very persuasive evidence with which to rebut the statutory presumption that, if released, he will pose a danger to the community. Also, at the hearing before this court, the government presented further evidence to corroborate the presumption that no conditions of release can assure the safety of the community.

Specifically, IRS Special Agent Lynette Redmer testified that co-defendant William Jahoda stated that defendant Nicholas frequently carried a weapon, was "hot tempered and quick fisted" and was "not shy about threatening people." *See De Novo* Hearing Transcript at 159–60. Agent Redmer also stated that according to Mr. Jahoda, Mr. Nicholas was actively involved in the bookmaking operation of the "street crew" from 1979 through 1989, earning approximately $100,000 per year by supplying gamblers to the "street crew". Jahoda maintains that Rocco Infelise kept Nicholas' share of the gambling profits while Nicholas was incarcerated for refusing to testify before the grand jury concerning the Joseph Ferriola/Rocco Infelise gambling business and that Nicholas was given his share when he was released from jail. While this testimony alone is not sufficient to persuade the court that there are no conditions of release which could assure the safety of the community, this testimony combined with the statutory presumption does convince the court that defendant Nicholas cannot be released on bond. The government's evidence shows that defendant Nicholas cannot be dissuaded from engaging in the crime for which he has been indicted. Therefore, defendant Nicholas must remain incarcerated pending trial.

## CONCLUSION

For the aforementioned reasons, the court denies defendant Nicholas' motion to vacate Magistrate Rosemond's detention order.