**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel Nicholas DIAZ, Defendant-Appellant.**

No. 85–2752.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 24, 1985.

Decided Nov. 22, 1985.

Opinion Dec. 2, 1985.

Nancy J. Nicol, Law Office of Terry Sullivan, Ltd., Rolling Meadows, Ill., for defendant-appellant.

Mark D. Stuaan, Asst. U.S. Atty., Peoria, Ill., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Diaz, the defendant in a criminal case pending in the district court, has asked us to order that court to admit him to bail pending the trial of the case. Diaz is being held under the pretrial-detention provisions of the Bail Reform Act of 1984, specifically 18 U.S.C. § 3142(e), which provides that, "Subject to rebuttal by the person [sought to be detained], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in [among other places] the Controlled Substances Act," 21 U.S.C. §§ 801 *et seq.* If the presumption is applicable and not rebutted, the judicial officer shall order the person detained till the trial is over. That is what the magistrate did here, and the district judge concurred.

On the background and proper interpretation of the rebuttable presumption in section 3142(e) see Judge Breyer's thorough discussion for the First Circuit in *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985). The only question we are asked to decide is whether there is adequate support for the determination that Diaz failed to rebut the presumption (which he concedes is applicable to him, since he has been indicted for multiple drug offenses, including violation of the "kingpin" statute, which carries a maximum punishment of life in prison without parole) that there is no condition that would reasonably assure Diaz's appearance at trial if bail were granted.

■■■ Appellate review of such a determination is, necessarily, highly deferential, even though personal liberty is at stake. The ultimate determination that the magistrate and then, if requested, the district judge is required to make—whether it is reasonably certain that the defendant will show up for trial if admitted to bail (and whether, even if so, he can be left at large without endangering the safety of any other person, see 18 U.S.C. §§ 3142(e)–(g); *United States v. Daniels*, 772 F.2d 382 (7th Cir.1985), but that is not an issue in this

case)—is inherently judgmental. It depends both on personal observation of the defendant and on a weighing of the daunting list of factors in section 3142(g) ("the nature and circumstances of the offense charged," "the weight of the evidence against the person," his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history," and several others). When the magistrate and district judge actually consider these factors, and agree on the outcome, and the factors don't all line up in the defendant's favor, it is difficult for an appellate court to second-guess the decision to deny bail. For although the presumption against bail is rebuttable, we agree with the First Circuit that it continues to weigh in the balance against bail even after the defendant meets his burden of producing some evidence to rebut the presumption. See 757 F.2d at 381–84. The presumption reflects a congressional judgment, to which we are obligated to give weight, that persons facing heavy sentences for particular types of offenses are likely to jump bail.

■ The magistrate and the district judge agreed that Diaz had not rebutted the statutory presumption. They had some grounds, certainly, for this conclusion. Diaz is charged with the most heavily punishable offense in the federal criminal code—with being a drug "kingpin"—and could if convicted face life imprisonment without parole. See 21 U.S.C. §§ 848(a), (c). (The federal penalty for murder is life imprisonment with parole possible after 10 years. See *United States v. Fountain,* 768 F.2d 790, 799–800 (7th Cir.1985).) That is a prospect likely to make anyone think of fleeing, especially if he is likely to be convicted, so that the prospect is more than theoretical. The evidence of Diaz's guilt is very strong, making it unlikely that if he stays and stands trial he will be acquitted—a happier outcome than becoming a fugitive from justice. A native of Cuba, he is fluent in Spanish and would find it easier than most to relocate to another country.

When arrested he was carrying almost $150,000 in cash, and although that money was of course taken away from him he may have other assets squirreled away which he could use to smooth his transition to a new life in another country. He is the kind of person who Congress was worried would have an overwhelming temptation to flee rather than face a trial having a predictable and severely adverse outcome.

There are, it is true, factors pointing against the likelihood of flight. Diaz has lived in the United States for 18 years (since he was 12), has been married for 12 years to an American citizen, has two children, is an honorably discharged veteran, has a good employment record, has many relatives in the United States, and has no prior criminal record or history of drug or alcohol abuse, a fact that among other things reduces somewhat the probability that he will receive the maximum sentence—which anyway is rarely imposed. But even the minimum sentence for being a drug kingpin is a stiff 10 years, again without possibility of parole. See 21 U.S.C. §§ 848(a), (c). It is true that unless Diaz could persuade his wife to flee with him and was willing to subject his children to the miseries of a fugitive existence, he could flee only at the cost of severing his most precious family ties; but if he stays they may be severed anyway, should he receive a long prison sentence without possibility of parole.

Diaz has presented a strong case that he would not flee, so that as an original matter we would find ourselves extremely uncertain how likely he is to flee. But, still being in a state of some perplexity, we cannot overrule the determination of the magistrate and district judge that requiring bond or other conditions that would leave Diaz at large pending trial would not reasonably assure that he would show up for trial.

What troubles us the most in the opinions below is the suggestion that Diaz might flee to Cuba. This seems most unlikely. So far as we know, the Cuban

regime is not hospitable to returning emigrés in general or suspected drug criminals in particular. But this was not the major factor in the magistrate's or district judge's determination and is not a sufficient basis on which to overturn the determination. As we said earlier, being bilingual expands Diaz's options—though we very much doubt that going back to Cuba is one of them.

■ Diaz may of course reapply to the magistrate for bail and point out to him how skeptical we are of at least one aspect of the magistrate's reasoning and how troubling we have found appellate resolution of this matter to be. In view of some doubts expressed by the magistrate in the course of the bail hearing we emphasize that the statutory presumption against bail in serious drug cases is, indeed, rebuttable, as the statute expressly states. It just doesn't disappear completely; it remains as a factor weighing against bail, though a factor that can be, and here may have been, outweighed by other factors.

The motion to be admitted to bail is DENIED.