UNITED STATES of America, Plaintiff,

v.

Wathen VIERS, Janis Viers, Defendants.

Crim. A. No. CR 85–00121–L(A).

United States District Court, W.D. Kentucky, Louisville Division.

April 22, 1986.

R. Kent Westberry, Asst. U.S. Atty., Louisville, Ky., for plaintiff.

Samuel Manley, Frank E. Haddad, Jr., Louisville, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

This action is submitted to the Court on the motion of Defendants (1) to suppress evidence obtained from a warrantless search on September 2, 1985, (2) a search pursuant to a search warrant issued on

September 2, 1985 by the District Court of Bullitt County, and (3) a search pursuant to two seizure warrants issued by the Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky on October 7, 1985.

On September 2, 1985 the state court search warrant was issued on behalf of an affidavit executed by Detective Robbie Poppelwell stating:

> On the 2nd day of September, 1985 at approximately 8:00 p.m., affiant received information observed: Wathen Viers enter into a marihuana patch while armed with a shotgun, said patch located adjacent to his property. Affiant has kept this field under surveillance for more than three weeks. Said field has been cultivated and topped in places. Affiant has observed the marihuana from the air & there appears to be ½ to 1 acre.
>
> Air surveillance shows a wagon road leading from the patch to Viers home. Affiant has smelled burning marihuana coming from a red frame outbuilding.

The search warrant authorized the search of a mobile home used as a residence by Wathen Viers, the building adjacent to his home, a 1971 Chevrolet pickup, a 1973 Chevrolet automobile, and a 1983 Buick, together with marijuana plants, seeds, processing equipment, and related drug paraphernalia.

The record does not disclose any information as to what property was seized pursuant to the Bullitt County search warrant. Therefore, the Court can only enter an order that, in the abstract, will either grant the motion to suppress or overrule it. For the reasons set out below, we will overrule the motion to suppress the Bullitt County search warrant, but will sustain in large part the motion made to suppress the evidence seized as a result of the search warrants issued by Judge Ballantine.

■ The testimony produced at the evidentiary hearing revealed that Poppelwell did not observe Viers entering either of the two marijuana patches that were located on the property of a person named Baldes who is a resident of Louisville and whose property adjoins the property of Viers. Instead, Detective Poppelwell saw Viers on Viers's own property with a shotgun heading in the direction of the property line. At that juncture, Poppelwell, who was on the property of Baldes with Agent Hammonds, shouted at Viers, told him to freeze, and announced that state police were present. After that warning did not have the desired effect, Poppelwell yelled another warning, at which time Viers fled towards an outbuilding located on his property. Poppelwell and Hammonds then pursued Viers to the building and shortly thereafter arrested Viers.

The weight of the testimony was to the effect that there were two marijuana patches on the Baldes's property, one that was approximately fifteen to twenty yards from the property line of Baldes and Viers. The second marijuana patch on the Baldes property was approximately 300 yards from the Baldes-Viers property line. The marijuana patches were encircled by monofilament fishing line and warning devices. In addition, there was a chair, a cooler, and clothing located on Baldes property indicating that the person who was growing the marijuana probably used such equipment. The field, however, was not located on Defendant's property, nor was there evidence that Viers owned the devices used to warn of intrusion. Thus, the portion of the affidavit that states that the affiant saw Viers entering the marijuana patch is false and must be stricken.

■ The affidavit is somewhat misleading and inaccurate in that it states that affiant had kept the marijuana field under surveillance for more than three weeks. The truth of the matter is that the affiant and other state law enforcement officers had been at the site on three occasions during a period of sixteen days. In this regard, Defendant argues that this is a false statement under the *Franks* decision. We do not find, however, that this is a false statement. An accurate statement would not have changed the general theme of the affidavit that over a period of time the affiant had observed the marijuana patch in question.

As to the statement that affiant had observed the marijuana patch from the air, that was patently inaccurate. More serious than that was the misstatement made to the effect that air surveillance showed a wagon road leading from the patch to Viers home. The great weight of the evidence was that the wagon road led from the Viers home to the Viers-Baldes property line. There was no wagon road on the Baldes property and we believe that the statements relative to the wagon road were made with reckless disregard for the truth and therefore should be excised.

Defendant also contends that the statement that the marijuana patch was located adjacent to Viers's property was false. However, *Webster's New International Dictionary*, 32 (2d ed. 1955), defines adjacent as meaning "lying near, close or contiguous." The dictionary also states that objects are adjacent when they lie close to each other but not necessarily in actual contact, as adjacent fields or villages. It is apparent from this definition that the word adjacent does not necessarily mean contiguous as the Defendants contend and hence, the affidavit, in this regard, is not false.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that if an affidavit, resulting in the issuance of a search warrant, is knowingly false or is executed in reckless disregard of the truth and where, with the affidavit's false material set aside, the remaining content of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Id.* at 156, 98 S.Ct. at 2676.

In the case of *United States v. Ciammitti*, 720 F.2d 927, 931–32 (6th Cir.1983), the affidavit that the Defendant sought to suppress stated that agents observed the Defendant obtain chemical and laboratory equipment from a Columbus, Ohio establishment that could be used to manufacture controlled substances. One agent also stated in the affidavit that he observed a person believed to be an employee of the chemical supply firm deliver chemicals and laboratory equipment to the Defendant. *Id.* at 931. In addition he stated that he observed the Defendant load certain chemicals in an automobile previously seen at the defendant's residence. *Id.* The Defendants contended that the agent did not observe any chemicals or equipment as the chemicals and equipment were enclosed in cartons. *Id.* The agent, however, testified that he observed the chemicals and knew from conversations with the head of the chemical company that they were to be delivered to the appellants. *Id.* He also saw some of the chemicals being placed in cartons that resembled those loaded into the appellant's vehicle. *Id.* The Court of Appeals held that the agent used the word "observed" in an imprecise manner but that the affidavit accurately conveyed his knowledge and satisfied the requirement that the statements be "truthful" as defined in *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). *Franks* held that statements are truthful if "the information put forth is believed or appropriately accepted by the affiant as true." 720 F.2d at 931–32.

We believe that this case is distinguishable from the *Ciammitti* decision that is relied upon by the government. We must therefore, under the principles set forth in *Franks* excise the statements made in disregard for the truth. Using that formula, the affidavit reads as follows:

> Affiant has kept this field under surveillance for for more than three weeks. The field has been cultivated and topped in places. Affiant has smelled burning marijuana coming from a red frame outbuilding.

While the affidavit as excised would lend no support for a probable cause determination that Viers was connected with the marijuana patches located on the Baldes property, it does lend support for the issuance of a warrant directing seizure of articles located on Viers property by reason of the statement that the affiant smelled burning marijuana coming from a red

frame outbuilding. The reasonable inference to be drawn from that statement is that the red frame outbuilding was located on the Viers property. In fact, the warrant only authorized search and seizure of items on the Viers property and not on the Baldes property.

■ The Defendants also allege that the officers in the Viers investigation went too far when they intruded onto Viers's curtilege, smelled marijuana smoke coming from the outbuilding, and searched the buildings without a warrant. In this regard, it is settled law that a warrantless entry will be justified when extant circumstances indicate that evidence of a crime would probably be found on the premises and that such evidence would probably be destroyed within the time necessary to obtain a search warrant. *See United States v. Elkins*, 732 F.2d 1280, 1284 (6th Cir. 1984). In the instant case, exigent circumstances justified the warrantless entry. Here, evidence showed that the officers were in pursuit of Viers when they entered his premises. That is, when Viers encountered the police, who identified themselves as such, and was told to "freeze," he raised a shotgun to his shoulders and pointed it toward the officers. At this point, the police fired two warning shots, whereupon Viers threw down his weapon and fled. Accordingly, the warrantless entry was justified by the circumstances. Further, although no evidence was seized from this entry, once the police entered the premises, "[i]t has long been settled that objects falling into the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).

On October 16, 1985 Judge Ballantine issued two seizure warrants, based on the affidavits of Special Agent Dan Estrem, commanding the United States Marshal, any special agent of the Federal Bureau of Investigation, and/or any other duly authorized federal law enforcement officer to seize the defendants' real property and moneys, negotiable instruments, securities, or other things of value and to initiate forfeiture proceedings. The Defendants argue that the affidavits of Estrem are based, in substantial part, on the "fruits" of the search conducted pursuant to the search warrant issued by the District Court of Bullitt County and are required to be excluded. The fruit of the poisonous tree doctrine, however, is inapplicable to the evidence seized pursuant to the warrants issued by Judge Ballantine because, as we have concluded, the warrant issued by the District Court of Bullitt County was valid. The Defendants allege, alternatively, that, although probable cause may have existed to conduct a search, the search was illegal because the objects seized were not particularly described and/or that the warrants name things other than an automobile.

■ The fourth amendment of the United States Constitution provides that search warrants may only be issued on a showing of probable cause that particularly describes the place to be searched and things to be seized. That is, the warrant must enable the searcher to reasonably ascertain and identify the things authorized for seizure. *See Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). The Court in *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), held, in this regard, that even though probable cause existed to conduct a search, the search in question was illegal because the place to be searched or the objects to be seized were not particularly described. *Id.* at 485–86, 85 S.Ct. at 511–12 (quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)). In short, the requirement that warrants must particularly describe the things to be seized makes general warrants unconstitutional. In the instant case, the warrants' description of the things to be seized, "real property," "moneys," "negotiable instruments," "securities," particularly describes things to be seized. We, however, find that one warrant's description, "other things of value," creates a problem of unlimited discretion in the executing officer's determination of what is subject to seizure. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748,

49 L.Ed.2d 627 (1976). As issued, the warrant supplied the searching agents with little guidance when it provided for the seizure of "other things of value."

Although, as stated in *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981), circumstances often make an exact description of the property impossible, the use of a general description in a warrant is acceptable only when a specific description is unavailable. For example, the court in *United States v. Cortellesso*, 601 F.2d 28, 32 (1st Cir.1979), upheld a search and seizure warrant for "stolen clothing." In *Cortellesso* the labels had been removed from brand name suits so that a more precise description would not have assisted the searcher. Here, however, the vehicle that was searched could have been particularly described.

The seizure warrant in question recited the wording of the forfeiture statute, 21 U.S.C. § 881(a)(6) (1981 & Supp. 1986). The forfeiture statute, however, merely lists property that is subject to forfeiture; it does not state that its wording is to be used in a seizure warrant. Further, the fact that the agents made the seizure and search pursuant to an act of Congress does not provide an exception to the warrant requirement. *United States v. McCormick*, 502 F.2d 281, 285 (9th Cir. 1974). Thus, we believe that the search warrant was constitutionally flawed. It is obvious that the FBI agent who served as the affiant in the application could have determined that the Viers vehicle was likely to be evidence of illegality and Judge Ballantine could then have easily directed seizure of that property. In this regard, we conclude, in reference to the warrant's description, "other things of value," that the seizure warrant failed to describe with particularity the vehicle that was seized.

When the government conducts a search warrant that does not particularly describe the things to be seized, the appropriate remedy is for the court to exclude from the evidence in a later criminal case the items improperly taken. The primary purpose of excluding evidence is to deter illegal searches. The Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), however, set forth circumstances in which the fruits of an illegal search may be admitted into evidence. In short, the Court in *Leon* held that when a police officer reasonably relies in objective good faith on a warrant issued by a detached and neutral magistrate, the prosecution will not be barred from using the seized evidence even if the warrant is later determined to have been defective.

Our inquiry, thus, is whether a well-trained officer would have known that the seizure was illegal despite the judge's authorization. *See Leon*, 104 S.Ct. at 3421 & n. 23. In this regard, we note that " 'evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, *or may properly be charged with knowledge*, that the search was unconstitutional under the Fourth Amendment.' " 104 S.Ct. at 3419–20 (quoting *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (emphasis original)). We emphasize that the Court in *Leon* adopted an objective standard, requiring officers "to have a reasonable knowledge of what the law prohibits." 104 S.Ct. at 3420 n. 20.

Here, we hold that a reasonably well-trained officer could not have believed that the warrant supported a seizure of the Viers automobile. The Court in *Leon* stated that in four circumstances a well-trained officer will not have reasonable grounds to believe that the warrant was properly issued. Under these exceptions suppression remains an appropriate remedy: (1) when the affiant provides information that he knows, or should know to be false, (2) when the magistrate issuing the warrant wholly abandons his judicial role, (3) when the warrant is based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " and (4) when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 104 S.Ct. at 3421–22. We con-

clude, therefore, based on our finding that the warrants in question did not particularly describe the things to be seized, that the good-faith exception does not apply, and that the evidence obtained from the seizure and subsequent search of the Viers vehicle should be suppressed. Further, nothing in the seizure warrants issued by Judge Ballantine authorized the government to enter the Viers home and seize its contents. Absent exigent circumstances in the instant case, only the seizure of the 59.16 acres of real property and the $377.00 in cash are supported by the warrants issued by Judge Ballantine. Thus, all items listed in the government's "Inventory of Property Taken," which, without more evidence, would not constitute a crime so that the repossession of such would subject the possessor to criminal penalties, must be returned to Viers. *See United States v. Ladson*, 774 F.2d 436 (11th Cir.1985).

We note that the decision in *United States v. Savoca*, 761 F.2d 292 (6th Cir. 1985), can be distinguished from the instant case. In *Savoca* the warrant describing "weapons," "disguises," "U.S. currency," and "fictitious identification," as the things to be seized, did not leave room for discretion insomuch as any and all "weapons," "disguises," "U.S. currency," and "fictitious identification" were to be seized. *Id.* at 299.

 Further, although the standard of probable cause to support a seizure for forfeiture has been held to be less precise than that required to obtain a search warrant in ordinary circumstances, *see United States v. Johnson*, 572 F.2d 227, 234 (9th Cir.1978), the government is not relieved from its burden of establishing probable cause to believe that the items seized were purchased with proceeds of drug transactions. Here, the government contends in its memorandum in response to the Defendants' motion to suppress, that the affidavit in support of the warrants issued by Judge Ballantine set forth sufficient probable cause to believe that the Defendants had obtained the vehicle in question by illegal dealing in drugs. Notwithstanding our conclusion that the description, "other things of value," was flawed, the affidavit does not support the government's contentions of probable cause in this regard. The affiant stated on page four of his affidavit:

> Also located in cabinets in the residence were four ledgers which revealed that Viers' primary sources of income appeared to be from illicit narcotics sales. Those ledgers based on notations made in them showed payments made for the trailer, farm, and personal belongings from what appeared to be money made from narcotic sales.

We cannot find, from reading the affidavit, probable cause to believe that the vehicle in question was obtained by illegal drug dealing. In *Howard v. United States*, 423 F.2d 1102, 1103 (9th Cir.1970), the court considered a similar question. The court in *Howard*, stating that "there was no evidence that the seizing officers had cause to believe that the Buick then contained or ever had contained, contraband," held a search of the car, pursuant to a seizure of the car in question under the forfeiture statutes, invalid. *Id.* at 1103–04.

 Further, although the officer asked Janis Viers for the keys to the vehicle in question and neither Viers nor her attorney objected, there can be no consent to a search where a law enforcement officer claims authority to search under a warrant. *Bumper v. North Carolina*, 391 U.S. 543, 548–50, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1967). In such cases, the official announces in effect that there is no right to resist the search.

 This Court has never decided whether it should suppress all of the evidence seized when a search warrant provides a constitutionally sufficient description of some, but not all, of the things to be seized. We therefore hold, agreeing with the majority of the courts that have considered this question, that the court should not invalidate the entire warrant but should suppress those things that were not particularly described. It would be too severe of a remedy if a warrant that was issued on probable cause and that did particularly describe certain items were to be invalidated in its entirety because a portion

of the warrant was defective. Thus, as this is not a situation where the entire warrant is defective, only evidence other than the 59.16 acres, more or less, located on route three in Bullitt County, Kentucky and moneys, negotiable instruments, and securities should be suppressed.

We now come to a consideration of the defendant's renewed motion for release from detention. In reviewing that motion, we have considered the evidence produced at both the detention hearing and at the suppression hearing. Title 18 U.S.C. § 3142(e) provides in substance that if the judicial officer who conducts the detention hearing prior to trial finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, he shall order the detention of the person prior to trial. Title 18 U.S.C. § 3142(e)(3) provides in part that subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, Title 21 U.S.C. § 801 et seq.

The defendant is charged with a three count indictment, the first of which charges him with the possession of more than 50 kilograms of marijuana with the intent to distribute and alleges that he violated Title 18 U.S.C. § 924(c) by using a firearm while committing a narcotic crime. The second count alleges the growing of marijuana with the intent to distribute in violation of Title 21 U.S.C. § 841(a)(1). The third count alleges that the defendant unlawfully possessed, with intent to distribute, in excess of one ounce of cocaine in violation of Title 18 U.S.C. § 841(a)(1). Count I carries a maximum of fifteen years, as does Count III, whereas Count II carries a maximum penalty of one year.

The case of *United States v. Hazime*, 762 F.2d 34, 35–36 (6th Cir.1985), holds that the return of an indictment that charges a defendant with an offense that carries a maximum term of imprisonment of ten years of more under the Controlled Substances Act is sufficient to establish probable cause that the defendant committed the charged offense. The court in *Hazime* stated that the district court had not identified whether the presumption was burden-shifting or evidentiary in character. *Id.* at 37. The appellate court also stated that the district court had failed to state clearly whether Hazime had failed to overcome the presumption that he would flee, that he would pose a danger to witnesses or the community by continuing his participation in the drug conspiracy or both. *Id.*

■ With regard to the effect of the presumption that is created by Counts I and III of the indictment, it has been held that this presumption imposes only a burden of production on the defendants and does shift the burden of persuasion on the government concerning the risk of flight and dangerous. *See United States v. Jessup*, 757 F.2d 378, 380–84 (1st Cir.1985); *United States v. Martir*, 782 F.2d 1141, 1143–47 (2nd Cir.1986); *United States v. Hurtado*, 779 F.2d 1467, 1470 n. 4 (11th Cir.1985); *United States v. Diaz*, 777 F.2d 1236 (7th Cir.1985); *United States v. Alatishe*, 768 F.2d 364, 371 n. 14 (D.C.Cir.1985).

Where the defendant produces no evidence whatsoever to rebut the drug and firearm offender presumption, the presumption is sufficient to support the conclusion that no conditions of relief could reasonably assure the appearance of the defendant and the safety of the community. *See Alatishe*, 768 F.2d at 364, 371 n. 14.

■ Once the defendant has produced some evidence to rebut the presumption, the presumption remains in the case as one factor among many that the statute requires a judicial officer to consider in determining whether detention is appropriate. *See Jessup*, 757 F.2d at 1141–42, *Martir*, 782 F.2d at 1146, and *Diaz*, 777 F.2d at 380–84.

In *Jessup* the court made the following statement:

Since the presumption is but one factor among many, its continued consideration by the magistrate does not impose a burden of persuasion upon the defendant. And, since Congress seeks only consideration of the general drug offender/flight problem, the magistrate or judge may still conclude that what is true in general is not true in the particular case before him. He is free to do so, and to release the defendant, as long as the defendant has presented some evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind.

Before summarizing the government's evidence at the detention hearing, we notice that the defendant put on the stand one witness, Mr. McKinley, who described the physical characteristics of the Viers property and who also testified that there was a faintly discernible foot path from marijuana patch A leading towards the defendant's property and a more distinct path that led to marijuana patch B which also led towards the Viers property. He also testified that the distance between the marijuana patch A on Baldes property and Viers trailer was seven hundred yards rather than one hundred fifty yards described in the affidavit of Mr. Estrem. He also described wagon tracks on the Viers place that he indicated were used for the purpose of removing wood from Viers property located close to the Valdes property line. He also stated that there was a path where the cattle walked from the field into the barn. When questioned by the United States Attorney, he referred to a tractor path which seems to be the same path he described previously as a cattle path and that the government previously described as a wagon road.

While this evidence undercut the statement made in Poppelwell's affidavit concerning the leading of the wagon path from Viers home to the marijuana patch and led the Court to conclude that the statement in the Poppelwell affidavit was in violation of the principles set out in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), it does not convince this Court that Defendant is entitled to be released from detention in light of the presumption created by the statute and the evidence produced by the government at the detention hearing.

In this regard, we have already described the encounter between the law enforcement officers and the defendant on September 2, 1985 up to the point where defendant dropped his gun and fled. Afterwards Viers was apprehended while carrying a semi-automatic pistol and three knives. Dan Estrem, an agent of the FBI, testified at the detention hearing that on examination of the wood frame building on defendant's property he found processed marijuana on the floor in baggies similar to those used for packaging and selling processed marijuana. There was also a scale in that building similar to ones used for weighing marijuana. There was a wood stove which when open revealed burned items that appeared to be drug paraphernalia and a smoking pipe. The oven also emitted a heavy odor of marijuana.

Later, on September 2, 1985 as a result of the search warrant issued by the Bullitt County District Judge, Estrem found in the house trailer a number of cabinets, drawers, and closets that contained various amounts of drug paraphernalia. Also located were four ledgers that indicated that Defendant's primary source of income was from illicit narcotic sales. These ledgers also showed payments made for the trailer, farm, and personal belongings.

During the course of the search, a large number of handguns, rifles and shotguns were found. Estrem testified that two of the weapons were stolen, and that he verified this information through a check with the NCIC (an agency that keeps a record of firearms and their owners). With the exception of three firearms, these guns were not seized on September 2, 1985.

Two old marijuana patches were also found on Viers property, one of which still had marijuana growing on it. Estrem also observed a third patch of marijuana located on Viers farm close to the barn. Estrem

testified that there were twenty-eight hundred plants found on the Baldes farm with a street value of two million dollars. In addition, Estrem found three hundred marijuana plants that he described as volunteer marijuana plants that had been shoots from a previous marijuana crop. In addition, Estrem testified that he found $12,000.00 in cash and $5,000.00 in a certificate of deposit in a box. According to Estrem, the cash had a cocaine residue on it.

The Court also finds that there was an established foot patch leading from defendant's trailer to the fence line of the adjoining property and a path established by a tractor leading to the same fence.

While we understand that the guns that were seized pursuant to Judge Ballantine's search warrants could not be introduced as physical evidence at the trial of the case in chief, Estrem's testimony as to what he observed while executing the Bullitt County warrant is competent for the purposes of this detention hearing. It is noted that 18 U.S.C. § 3142(f)(2)(B) provides in part that the rules concerning inadmissibility of evidence in criminal trials do not apply to the presentation and consideration of information at a detention hearing.

In light of the testimony that the Court has recited and the rebuttable presumptions that we discussed previously and that should be taken into consideration with other evidence in the case, we have reached the conclusion that there are no conditions of release that will reasonably assure the safety of the community. In making this determination, the Court finds significant the following factors:

1. Ledgers were found that used the words "ludes," "cocaine," and "marijuana."

2. $17,500 was found in the Viers trailer.

3. Residue of cocaine was identified in the box containing money.

4. Drug paraphernalia was found.

5. A large number of loaded firearms were found.

6. Three marijuana patches on Defendant's property, two of which were no longer used, were discovered.

7. Evidence that the marijuana patches on the Baldes property were surrounded by warning devices that Viers was capable of installing.

Therefore, we have this day entered our order overruling in part and granting in part the motion to suppress and overruling the motion for release from detention.

## ORDER

Defendant, Wathen Viers, having filed a motion to suppress evidence, and the hearing on the motion having been held before the Court on February 26, 1986, and the Court being fully advised in the premises, and having filed its Findings of Fact, Conclusions of Law and Memorandum Opinion,

IT IS ORDERED AND ADJUDGED that the motion to suppress evidence be, and it hereby is, denied as to the search warrant issued by the Bullitt County District Court on September 2, 1985, and that the motion be, and it hereby is, sustained as to the two search warrants issued by the Honorable Thomas A. Ballantine, Jr. of the Western District of Kentucky on October 17, 1985, with the exception of the following items: (a) the real estate belonging to the Defendants; (b) the money seized by the agents; and (c) the pipes that were used to smoke the drugs.

IT IS FURTHER ORDERED that Defendant's, Wathen Viers, motion for release from detention be, and it hereby is, overruled.

This is a final and appealable order insofar as it pertains to the motion of the defendant for release from detention, and insofar as it grants the defendant's motion to suppress the evidence seized on October 17, 1985, said ruling being appealable by the United States.