**UNITED STATES of America, Plaintiff,**

v.

**Carl LEIBOWITZ, Defendant.**

**No. S Cr 87–2(1).**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 30, 1987.

Tom O. Plouff, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Richard E. Kieser, South Bend, Ind., Gerald M. Werksman, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is before the court on the defendant, Carl Leibowitz's, motion for a hearing to determine whether the defendant is entitled to release pending trial. The defendant was arrested on a warrant issued pursuant to a criminal complaint containing 2 charges, and a maximum possible penalty of ten (10) years. The government moved for detention, pursuant to Section 3141 *et seq.* of Title 18 of the United States Code, before the Honorable Marcia Cooke, United States Magistrate for the Eastern District of Michigan. Following a detention hearing Magistrate Cooke determined that the defendant should be released on a $75,000.00 cash bond. The government moved for a stay pending a review under 18 U.S.C. § 3145 of the release order. Magistrate Cooke granted the stay. The Honorable Robert L. Miller, Jr., United States District Judge for the Northern District of Indiana, conducted a hearing to review the release order on December 24 and December 26, 1986. Following that hearing Judge Miller found that the government had proved by clear and convincing evidence that the release of the defendant under a condition or combination of conditions would endanger the safety of another person or the community, and the defendant was ordered detained. On January 9, 1987 the defendant appealed that detention order to the United States Court of Appeals for the Seventh Circuit.

On January 9, 1987, the Grand Jury for the Northern District of Indiana returned an indictment against the defendant in which the defendant is charged in 23 counts. The defendant made his initial appearance under the indictment before the Honorable Robin D. Pierce, United States Magistrate for the Northern District of Indiana.

The government contends that a separate determination under Section 3141 *et seq.* is unnecessary because the order to detain "prior to trial" covers the indictment issued after the criminal complaint. The position of the government does not have express support in the statute, nor has this judge been able to discover any case law which supports such a position. Therefore, in the interest of providing the most comprehensive protection of the defendant's due process rights a distinct detention hearing based on the indictment was conducted on January 22, 1987. The parties were given until January 26, 1987, to submit supplemental briefs and oral argument was heard on January 28, 1987. These proceedings and this Order are not an appellate review pursuant to Section 3145(b) of Title 18 of the United States Code, and pursuant to Section 3142(i) of Title 18 of the United States Code, the court makes the following findings of fact for the purpose of this detention order. The evidence introduced at the hearings before Judge Miller and Magistrate Cooke, as well as the evidence and arguments before this judge have been considered.

### II.

On January 9, 1987, this defendant was charged in 23 counts of an indictment with conspiracy to violate Section 1952A of Title 18 of the United States Code, in violation of 18 U.S.C. § 371 and various violations of Sections 2, 1503, 1512(a)(2)(A), and 1952A of Title 18 of the United States Code. Those charges are as a result of an alleged murder for hire scheme to kill Mr. Gary Van Waeyenberghe, and Mr. Paul Holland. The defendant has entered a plea of not guilty to all counts. The crimes charged clearly involve violence. However, the circumstances of this case are not such that a "rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community ..." 18 U.S.C. §§ 3142(e) and 3142(f)(1). The maximum possible sentence which could result from the charges is 120 years or $465,000 in

fines or some combination of both, as well as a possible special assessment of $1,150.

The defendant is 52 years old, married and has three children, one who is currently at home recuperating from a serious accident. For the past eighteen months the defendant has resided in Farmington Hills, a suburb of Detroit, Michigan. At one time the defendant was an attorney admitted to practice law in Indiana. However, he was suspended from the practice of law in Indiana in 1982 for two years for entering into a business transaction with a client and neglecting two probate cases. The defendant has no prior criminal record. In connection with a charge brought in LaPorte County, Indiana, which was dismissed, the defendant who was free on bond made all court appearances.

The defendant is alleged to have contracted, with Mr. Donald Wrobel, a defendant in this case, for the murder of Mr. Gary Van Waeyenberghe and Mr. Paul Holland. Mr. Van Waeyenberghe was a business associate of the defendant, and they are targets of a grand jury investigation into an allegedly abusive tax shelter.[1] The contract on Mr. Holland was allegedly arranged by the defendant for Mr. Jimie Ray Estep, who is also a defendant in this case. Mr. Estep and the defendant knew each other and the defendant was to handle the payment for the kill.

The government first became aware of the murder for hire schemes through an unidentified informant, on December 16, 1986.

The evidence before the court includes a large assortment of tapes and transcripts. First, the testimony of special agents about conversations with the unidentified informant, Mr. Wrobel and Mr. Van Waeyenberghe. The conversations with Mr. Wrobel and Mr. Van Waeyenberghe were conducted with permission of the respective attorneys representing each individual in this or other matters.[2] Secondly, there are several tape recordings, and redacted and unredacted transcripts of those tape recordings, of consensually monitored telephone conversations. Those tapes include in chronological order telephone conversations between the unidentified informant and Mr. Wrobel; Mr. Wrobel and the defendant; Mr. Van Waeyenberghe and his wife; Mr. Van Waeyenberghe and a female answering the telephone at the defendant's residence in Farmington Hills, Michigan; the defendant and Mr. Van Waeyenberghe at his room in LaQuinta Inn in Merrillville, Indiana; Mr. Van Waeyenberghe to an answering machine which was activated by a call to the defendant's residence; and Wrobel's two calls to "Jim" in Clearwater, Florida. In addition, there is a taped telephone conversation between Mr. Hummel, a detective with the Indiana State Police and Mr. Van Waeyenberghe. Further, there is a tape recording of a conversation between the unidentified informant and Wrobel. That conversation was recorded using a body microphone worn by the unidentified informant; agent Herrity was monitoring that conversation while it was being recorded. In addition, the testimony of Agents Robert Hanis, Webb G. Dayton, Thomas J. Herrity, Dennis Clements as well as Carol Phillips, wife of the defendant, Robert Mattingly, Michael P. Barnes, Robert Radde, and the defendant was considered. The defendant also submitted a psychiatric evaluation of Mr. Donald Wrobel. Finally the court has all the evidence which was before Judge Miller, Magistrate Cooke and any additional evidence submitted in the hearing before this judge. At this point, the record is as fully developed as need be for a detention proceeding. Some of the testimony is hearsay or compound hearsay, and in determining the facts for the purpose of the detention order, the court has considered the hearsay problems and given little if any weight to uncorroborated com-

---

**1.** Mr. Van Waeyenberghe also faces a 13 count federal indictment charging him with other offenses. *See, United States v. Van Waeyenberghe,* No. S Cr 86–00041 (N.D.Ind.1986).

**2.** The government represents to the court that Wrobel and Van Waeyenberghe voluntarily consented to be interviewed and that no "deal" was reached in exchange for those interview.

pound hearsay. An analysis of the evidence illustrates the following facts.

The defendant, acting for Mr. Estep, contacted Mr. Wrobel and asked him to contact "Jim" in the Cincinnati, Ohio, area. Mr. Wrobel did contact Jim and it is alleged as a result Wrobel was hired to murder Mr. Paul Holland. The unidentified informant and Mr. Wrobel related very similar facts about the meeting with Mr. Estep. In return for killing Mr. Holland, Mr. Wrobel was to receive payment from the defendant of $4,000 in two payments. The first payment of $2,000 was to be paid before the job, followed by $2,000 after the job was completed. Mr. Estep gave Mr. Wrobel a packet of information which included a description of Mr. Holland, his residence, his place of employment, and Holland's car keys. All of that information was recovered during the execution of two search warrants for Wrobel's residence and his vehicle.

Mr. Wrobel made several trips to the Cincinnati, Ohio, area to fulfill his contract. On at least one occasion Mr. Wrobel placed a bomb or bombs in Mr. Holland's car. The bombs did not explode; they were discovered when the car was being repaired. The Hamilton County Police, in Hamilton County, Ohio, reported that the bombs were not capable of exploding due to improper construction.

The defendant also contacted Mr. Wrobel and asked Mr. Wrobel to murder Mr. Van Waeyenberghe. The unidentified informant told government agents that the defendant often called Mr. Wrobel and left numbers with a (313) area code for Mr. Wrobel to return the calls. On one occasion, the defendant called Masters Security and talked with the unidentified informant and asked: if the defendant could get Mr. Van Waeyenberghe to the JMS Building in South Bend, Indiana, could the contract be completed by hitting Mr. Van Waeyenberhe with a karate chop as he exited an elevator? Those calls and circumstances took place before the unidentified informant came forward.

On December 16, 1986, the unidentified informant described to agent Clements facts surrounding an attempt on Mr. Van Waeyenberghe's life. Those facts are independently corroborated by Mr. Van Waeyenberghe and Mr. Wrobel. The attempt on Mr. Van Waeyenberghe's life began when he was called by the defendant and instructed to go to a telephone booth in Wyatt, Indiana at 10:00 o'clock P.M. on October 12, 1986. That telephone booth is on the north side of a building with open areas to the east and south of the booth, and is located across Route 331 from a restaurant. Mr. Van Waeyenberghe had waited at that telephone booth for calls from the defendant on at least one other occasion. On that previous occasion, Mr. Van Waeyenberghe thought he was being watched and followed by someone in a dark pickup truck with a cap on the back. Mr. Van Waeyenberghe left the phone booth and drove to his parents' house on Kelly Street. He noticed the pickup truck had followed him and after he went inside the house the pickup drove by the house slowly, turned around and passed the house again. At that point Mr. Van Waeyenberghe attempted to follow the pickup truck but was not successful and was not able to see the license number of the truck. Mr. Wrobel told the government agent that he had followed and watched Mr. Van Waeyenberghe at that phone booth, and had followed him to a house on Kelly Street, and that someone from that house had tried to follow him.

On the night of October 12, 1986, Mr. Wrobel who had been told by the defendant that Mr. Van Waeyenberghe would be at the telephone booth in Wyatt, Indiana, at 10:00 P.M., went to Wyatt, Indiana. Mr. Wrobel, before 10:00 P.M. on October 12, 1986, parked his truck some distance from the area of the telephone booth, and took a position under or near a tree approximately 50 feet east of the telephone booth. Mr. Wrobel saw Mr. Van Waeyenberghe in his car and also waiting in the lighted telephone booth. Mr. Wrobel saw Mr. Van Waeyenberghe pick up the telephone receiver. Then Mr. Wrobel aimed a .22 cali-

ber rifle at Mr. Van Waeyenberghe and fired. Mr. Wrobel saw the glass shatter, heard Mr. Van Waeyenberghe scream, and saw him go down. Mr. Wrobel fled the scene to his truck and departed. Mr. Van Waeyenberghe was not severely injured, he only sustained minor cuts, apparently from broken glass. After he screamed and ducked down in the telephone booth Mr. Van Waeyenberghe quickly got in his car and fled. Mr. Van Waeyenberghe told detective Hummel that he had heard what sounded like a shot before the glass shattered. He also told the detective that when he answered the telephone the defendant accused him of talking to the feds. Later on the evening of October 12, 1986, Mr. Van Waeyenberghe called the defendant and the defendant told Van Waeyenberghe that he should leave the area. Mr. Van Waeyenberghe chose not to leave the area. However, he did not report the attempt on his life to any authorities; apparently Van Waeyenberghe thought the shooting incident could result in the revocation of his release on bond under the other federal charges. Mr. Van Waeyenberghe did relate the facts surrounding the shooting to an attorney who was representing him. Once the government agents became cognizant of the alleged attempt on Van Waeyenberghe's life, they called his attorney who confirmed that Van Waeyenberghe had related similar facts to him.

After the government obtained an arrest and search warrants for Mr. Wrobel's residence and vehicle, they executed the warrants and arrested Mr. Wrobel. Mr. Wrobel decided to cooperate with the government's investigation and his statements confirmed the information provided by the unidentified informant. The execution of the search warrants uncovered physical evidence which also corroborated the statements of the unidentified informant. After deciding to cooperate Mr. Wrobel placed a monitored telephone call to the defendant. Mr. Wrobel asked the defendant if he could find out where some individual was going to be. The defendant said he would find out and call Mr. Wrobel right back. The defendant called Wrobel back and told him

the individual was "out of town until tomorrow night." Van Waeyenberghe's wife had told the defendant her husband was out of town "tying up loose ends." During that conversation the defendant and Mr. Wrobel also discussed the possibility of using a setup similar to that in the Wyatt deal. It was agreed that the defendant would call Worbel on his "beeper" when the defendant found out where Van Waeyenberghe would be.

The government had placed Van Waeyenberghe into protective custody. While in custody Van Waeyenberghe called his wife and she told him that the defendant had called and inquired about Van Waeyenberghe's whereabouts. She told her husband that she told the defendant that Van Waeyenberghe was out of town "tying up loose ends." Following that conversation Van Waeyenberghe called the defendant. A female who answered the phone said the defendant was not there; the female took the telephone number where Van Waeyenberghe could be reached. The defendant called Van Waeyenberghe at the number Van Waeyenberghe had left. During that conversation Van Waeyenberghe agreed to telephone the defendant the next day when Van Waeyenberghe returned to Bremen, Indiana. Van Waeyenberghe called the defendant on December 19, 1986 but got an answering machine. He left a message that he would be at his parents' restaurant until closing. Then at approximately 6:20 P.M., December 19, 1986, the following message was received on Wrobel's beeper: "Hello, this is Carl, he's at the restaurant all night, working, probably up until closing." Wrobel called the defendant, a female answered but the defendant subsequently took over the telephone. The defendant asked Wrobel "did you get my message?" During that telephone conversation, the defendant and Wrobel discussed payment if Wrobel completed the contract that night. In addition, Wrobel asked the defendant about the two thousand dollars apparently from Mr. Estep, and the defendant said that he had been spending it. Finally, Wrobel tells the defendant he has

a .303 caliber weapon to shoot Van Waeyenberghe when he walks out of the restaurant. However, the defendant said that if anyone, possibly Van Waeyenberghe's parents, is with Van Waeyenberghe that Wrobel should "walk away". Shortly after that telephone call the defendant was arrested.

After the defendant's arrest the defendant's wife called Mr. Estep in Florida. The defendant's wife knew Mr. Estep was a business associate of the defendant, and that he owed the defendant money. She hoped to raise money for bond. She told Mr. Estep that her husband has been arrested on a charge of murder-for-hire.

Mr. Wrobel called Mr. Estep to discuss the job in the Cincinnati, Ohio, area. Mr. Estep was unable to talk and asked Wrobel to call back after 11:00 P.M., which Wrobel did. Estep told Wrobel that the defendant had been arrested on a charge of murder for hire. Estep advised Wrobel not to go forward with the Cincinnati job until Wrobel determined what was happening with the defendant.

The defendant introduced evidence that the telephone booth did not have any damage other than the shattered glass. That evidence is not inconsistent with the accounts of the attempt on Van Waeyenberghe's life. In addition, the defendant introduced a "psychiatric evaluation" of Wrobel. That evaluation has some effect on the credibility of any statements made by Wrobel which are not independently corroborated. The court's decision does not rely upon any evidence solely from Wrobel.

### III.

The Bail Reform Act of 1984 requires the court to detain a defendant unless a condition or combination of conditions will reasonably assure (1) the defendant's appearance as required and (2) the safety of any other person and the community. 18 U.S.C. § 3142(e). The Court of Appeals for the Seventh Circuit held that the Bail Reform Act of 1984 did not violate the Fifth and Eighth Amendments of the Constitution of the United States. *United*

*States v. Portes,* 786 F.2d 758 (7th Cir. 1985). The government bears the burden to prove either that the defendant is a flight risk or a danger to the community. *United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985). The government's burden, under the danger to the community element of the statute is to prove by clear and convincing evidence that the defendant is a danger to any other person or the community. *United States v. Portes,* 786 F.2d 758, 764 (7th Cir.1985). Under the risk of flight element of the statute the government need only prove by a preponderance of evidence that a condition or combination of conditions will reasonably assure the appearance of the defendant as required.

When analyzing whether the government has met the requisite burden of proof, the court may consider several factions. 18 U.S.C. § 3142(g). Those factors include:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . .;

*Id.* The evidence presented to the court at a detention hearing is not limited by rules concerning the admissibility of evidence in criminal trial. 18 U.S.C. § 3142(f). Further, as Judge Posner pointed out in *United States v. Diaz,* 777 F.2d 1236 (7th Cir. 1985), the court is "obligated to give weight" to the fact "that persons facing heavy sentences for particular types of offenses are likely to jump bail." *Id.,* at 1238. *Diaz* involved a charge for which Congress created a rebuttable presumption, but the logic applies in all cases where the maximum possible sentence is heavy.

In this case the government has proven by clear and convincing evidence that no condition or combination of condi-

tions will reasonably assure the safety of any other person or the community. In reaching that conclusion, Judge Bauer's opinion in *United States v. Dominguez*, 783 F.2d 702 (7th Cir.1986) has provided guidance. In that case, the Court of Appeals held that the finding of dangerousness to the community "cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." *Id.*, at 707. In this case the charges include interfering with a grand jury investigation and murder-for-hire. The evidence demonstrates that the first attempt failed, but the defendant was not deterred and took steps which he believed would set up a subsequent attempt. The defendant's acts clearly and convincingly demonstrate the likelihood of future misconduct. Further, the weight of the evidence before the court supports the conclusion that the government has met the requisite burden under the danger to the community element.

There is more than a mere preponderance of evidence before this court which illustrates that no condition or combination of conditions will reasonably assure the defendant's appearance as required. Since Judge Miller's hearing and Order, the maximum possible sentence to be imposed has jumped from ten (10) years or $15,000 in fines or some combination of both to 120 years or $465,000 in fines or some combination of both and a possible special assessment of $1,150.[3] There was evidence that the defendant appeared as required at all court proceedings related to an arson charge which was later dismissed. The possible penalties in this case are substantially greater than the charges the defendant faced on the arson charge. That factor clearly supports the conclusion that the defendant is a flight risk. *Accord, Diaz*. 777 F.2d at 1238. In addition, the weight of the evidence in this case supports the finding that no condition or combination of

conditions will reasonably assure the appearance of the defendant as required.

The defendant presented some evidence of family ties, community ties, length of residence in the community (18 months), employment, and past conduct. Nevertheless, that evidence does not outweigh the quality and quantity of evidence which supports the government's burden.

According, and for all the above reasons, it is the ORDER of the Court that, pursuant to Section 3142(e) of Title 18 of the United States Code, the defendant, Carl Leibowitz, be detained. It is FURTHER ORDERED that the defendant, Carl Leibowitz, is committed to the custody of the Attorney General of the United States for pretrial confinement in an appropriate corrections facility with the specific direction that the defendant be afforded a reasonable opportunity for private consultation with his counsel and that upon Order of court or request of the United States Marshal, this defendant shall be delivered to the United States Marshal for the purpose of such appearance, all as provided in 18 U.S.C. § 3142(i). SO ORDERED.

As indicated orally in open court on January 28, 1987, this court stands ready to sever the trial of this indictment as to the defendant, Carl Leibowitz, and to commence the trial of this case as to this defendant on March 23, 1987, in South Bend, Indiana, or some other suitable location.

Counsel for this defendant and the Assistant United States Attorney who will try this case shall file a written statement as to their willingness to proceed in this fashion no later than February 9, 1987.

---

**3.** Although not critical to the decision of the Court, the government proffered evidence of charges filed against the defendant in an Indiana State Court. The government repre-

sented that those charges carry a penalty of approximately 100 years, forty of which is non-suspendable.