In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-2559

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LASHAWN L. WILKS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 19-CR-40085-JPG-18 — **J. Phil Gilbert**, *Judge*.

SUBMITTED SEPTEMBER 17, 2021 — DECIDED OCTOBER 12, 2021

Before SYKES, *Chief Judge*, and ROVNER and BRENNAN, *Circuit Judges*.

SYKES, *Chief Judge*. This is an appeal from an order revoking pretrial release based on the defendant's violation of his release conditions. We have not yet had occasion to address the legal standards for revocation or the standard of review on appeal. We do so here.

In June 2020 Lashawn Wilks was indicted in the Southern District of Illinois for possessing a firearm as a prohibited person. He was released on bond with strict conditions, including home confinement (with limited exceptions for employment and the like) and additional restrictions on his activities and associations. Several months later the grand jury issued a superseding indictment in an earlier-filed drug-trafficking case adding Wilks as a defendant and charging him with conspiracy to distribute methamphetamine and related drug charges. The new indictment also included the original firearm charge; his bond and release conditions were carried over to the new case.

Wilks obtained the district court's permission to leave his home near Indianapolis to stay overnight in Centralia, Illinois, from July 2–6, 2021, for the purpose of attending two medical appointments, a family wedding, and religious services. But while there he did not confine himself to those activities. In the early morning hours of July 4, Wilks was at a bar in Mount Vernon, Illinois, where a fatal shooting occurred. Though he is not a suspect in the homicide, surveillance video shows that shortly before the shooting, he was talking with one of his codefendants who was also there. Wilks remained at the scene afterward, encountering law-enforcement officers when they arrived.

The government moved to revoke Wilks's release as a sanction for violating his release conditions, which prohibited any contact with codefendants and also required him to promptly report any contact with law enforcement to his pretrial-services officer. The district judge held a hearing, viewed the video, and revoked Wilks's release, though on grounds other than those argued by the government. Wilks appealed.

Revocation of pretrial release is governed by 18 U.S.C. § 3148. As we will explain, the judge did not hew to the statutory framework in making the revocation decision. We therefore reverse and remand for further proceedings.

## I. Background

Wilks is awaiting trial in the Southern District of Illinois on charges of conspiracy to distribute methamphetamine and related offenses. He was initially indicted in June 2020 on a single count of possessing a firearm after being convicted of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g)(9). The government moved to detain him pending trial on that charge, asserting that he was a flight risk and a danger to the community based on his criminal history, which includes a murder charge (of which he was acquitted) and misdemeanor convictions for domestic violence, fleeing, obstruction of justice, and crack possession. The government also proffered evidence that Wilks had threatened police officers in Centralia. A magistrate judge denied the motion and ordered Wilks released on a $5,000 appearance bond and subject to multiple conditions of release, including home detention at his residence near Indianapolis.

In September 2020 the grand jury issued a superseding indictment adding Wilks as a defendant in a pending multiple-defendant drug case. The new indictment charged him with six crimes: conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 846; four counts of using a telephone to facilitate a drug transaction, *id.* § 843(b); and the original § 922(g)(9) count. Wilks's bond and conditions of release were transferred to the drug-conspiracy case; the stand-alone firearm case was closed.

Three of Wilks's conditions of release are relevant to this appeal: (1) the home-confinement condition, which restricts him to his home except for employment, religious services, attorney visits, court appearances, medical treatment, and other activities preapproved by the court or pretrial services; (2) a requirement that he avoid all contact, direct or indirect, with victims, witnesses, and codefendants; and (3) a requirement that he promptly report any contact with law-enforcement personnel to his pretrial-services officer.

Wilks frequently sought temporary amendments to his home-confinement condition to permit him to attend family events and medical appointments. The district judge denied some motions and granted others. The request at issue here concerns a trip to southern Illinois over the weekend of July 4, 2021, to attend medical appointments on July 2 and 6 and a family wedding on July 3. The judge's order granting the request authorized Wilks to stay overnight in Centralia from July 2–6 to attend medical appointments in Mount Vernon on July 2 and Centralia on July 6, the wedding on July 3, and church services with his family on July 4.

Wilks's weekend trip to southern Illinois was more eventful than the judge anticipated. At about 2 a.m. on July 4, a man was shot and killed on the patio of a bar in Mount Vernon. The bar's surveillance camera recorded the event, and the video shows that Wilks was present when it happened; indeed, he was standing not far from the shooter. More specifically, the video shows that shortly before the shooting, Wilks was on the patio talking with a group of bar patrons and drinking from a plastic cup. About a minute before the shooting, Keith Peoples, Jr., one of Wilks's codefendants, joined the group and spoke to Wilks. The video also shows that after the

shooting, Wilks remained at the scene and encountered the police when they arrived to investigate. He did not report this law-enforcement contact to his pretrial-services officer.

After the surveillance video came to light, the government moved to revoke Wilks's bond as a sanction for violating the conditions of his release. The motion identified two violations: Wilks's contact with codefendant Peoples and his failure to report his contact with law enforcement to his pretrial-services officer. The government also cited evidence from the Drug Enforcement Administration ("DEA") suggesting that Wilks had talked with another of his codefendants and possibly even continued his drug trafficking while on pretrial release. Wilks's pretrial-services officer submitted a report explaining that the contact with Peoples violated the release condition forbidding any contact with codefendants. She also noted Wilks's contact with law enforcement but did not identify his failure to report it as a violation of his bond.

At a hearing on the revocation motion, the government presented the surveillance video and the parties debated what it showed. They also disagreed about whether the DEA's evidence was reliable. The judge sidestepped these disputes and instead focused on a point that he said the parties had "glossed over or missed." Reading from his order authorizing the weekend trip to Centralia, the judge emphasized its limitations: he had given Wilks permission to attend *only* a family wedding, two medical appointments, and church services; he had *not* given him permission to go to a bar. The judge therefore found that Wilks had violated his home-confinement condition as amended by the order setting the terms of his weekend visit to Centralia. On that basis—not the grounds urged by the government and the pretrial-services officer—

the judge revoked the release order and ordered Wilks detained pending trial.

The judge memorialized his ruling in a brief written order. After reciting the terms of the home-detention condition and the order authorizing the trip to Centralia over the July 4 weekend, the order states:

> [V]ideo footage confirmed that on July 4, Wilks congregated outside a bar at approximately 2 a.m. This was a violation of both his conditions of release and this [c]ourt's order allowing him to travel—notwithstanding the fact the bar was also the scene of a murder and that Wilks may have also had contact with the shooter and a codefendant. Immediate detention pending disposition of this case is therefore necessary and appropriate to achieve reasonable assurance that Wilks will appear before the [c]ourt as required and to safeguard public welfare. *See* 18 U.S.C. § 3142(f).

Wilks appealed. *See* 18 U.S.C. § 3145(c); FED. R. APP. P. 9(a). He asks us to reverse the judge's order and remand with instructions to release him "on such conditions as this [c]ourt deems just and proper."

## II. Discussion

Wilks challenges the judge's revocation order on both procedural and substantive grounds. He contends that the judge wrongly focused on an argument not urged by the government—i.e., that his mere presence at the bar violated the terms of the order authorizing the trip to Centralia. He also suggests that his presence at the bar at 2 a.m. on July 4 did not actually

violate the order authorizing the trip because there was no curfew attached to his attendance at the wedding on July 3. Finally, he argues that even if he did violate a condition of his release, the judge failed to explain why detention was necessary.

Wilks's first point is meritless, the second is feeble, but the third is well taken. The judge did not address why detention is necessary as required by the revocation statute. Nor did he otherwise situate his ruling within the statutory framework.

We begin with the legal standards that govern pretrial detention decisions. As a general matter, detention pending trial is appropriate if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To make that determination, the judge must consider the factors listed in 18 U.S.C. § 3142(g), which include (among other things) the nature of the charged offense, the defendant's history and characteristics, and the risk to the public.

A defendant charged with a serious drug crime, like Wilks, is subject to a rebuttable presumption that there are no conditions that will assure his appearance and the safety of the community. *Id.* § 3142(e)(3)(A). This places a light burden of production on the defendant, but the burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention. *United States v. Dominguez*, 783 F.2d 702, 706–07 (7th Cir. 1986). Rather, the presumption is considered together with the factors listed in § 3142(g). If the government does not carry its burden to justify detention, the judge must order the defendant's release pending trial subject to the least restrictive

combination of conditions that will reasonably assure his appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B).

If a defendant on pretrial release is alleged to have violated a condition of his release, the calculus shifts slightly. The government may move to revoke release under 18 U.S.C. § 3148 as a sanction for the violation. On such a motion, the judge shall revoke release and order the person detained if, after a hearing, he

> (1) finds that there is—
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; *or*
>
> (B) clear and convincing evidence that the person has violated any other condition of release; *and*
>
> (2) finds that—
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; *or*
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

§ 3148(b) (emphases added).

We have not yet had occasion to address this statute in a published decision. Nor have we decided the standard of

review for a revocation decision. For appeals of an initial decision to detain or release a defendant, we have adopted a standard that calls for an "independent review" of the decision below, though with deference to the judge's findings of historical fact and his greater familiarity with the defendant and the case. *United States v. Portes*, 786 F.2d 758, 763 (7th Cir. 1985). Wilks and the government rely on this standard without exploring whether it also applies in the revocation context.

We conclude that the same standard of review governs an appeal from an initial detention decision *and* a decision to revoke pretrial release. The statutory authority for appellate review, § 3145(c), is identical in both contexts—as is the defendant's interest in his personal liberty and the government's interest in ensuring the safety of the community and securing the defendant's appearance in court. Our review of a revocation decision should therefore be no more—and no less—searching than our review of an initial release or detention decision.

The circuits have long been split on just how searching that review is, but our standard of review conforms to the majority rule. *Portes*, 786 F.2d at 762 (collecting cases). And our sister circuits appear to agree that the standard is the same for an initial release or detention decision and a decision to revoke release. *See, e.g.*, *United States v. Moreno*, 857 F.3d 723, 725–26 (5th Cir. 2017); *United States v. Howard*, 793 F.3d 1113, 1113 (9th Cir. 2015); *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003); *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000); *United States v. Welsand*, 993 F.2d 1366, 1367 (8th Cir. 1993).

Applying independent review, and with due deference to the judge's factual findings and his greater familiarity with Wilks and this case, we conclude that the current record is inadequate to support the revocation decision. First, the judge did not find by clear and convincing evidence that Wilks violated a condition of release. *See* § 3148(b)(1)(B).[1] We take the judge's point—now echoed by the government—that Wilks was not authorized to go anywhere he wanted to while he was in southern Illinois for the family wedding over the July 4 weekend. But the government's motion and the arguments at the hearing focused on other alleged bond violations— namely, Wilks's contact with a codefendant and his failure to report his contact with law enforcement. Though it was not improper for the judge to reframe the inquiry, the fact remains that Wilks's counsel did not have an opportunity to address the specific issue that the judge was concerned about.

Second, the judge did not explain why detention was necessary according to the criteria of § 3148(b)(2)(A) or (B). His order states only that detention is "necessary and appropriate to achieve reasonable assurance that Wilks will appear before the [c]ourt as required and to safeguard public welfare," citing § 3142(f). That provision is similar to § 3148(b)(2)(A), but both statutes require the judge to weigh the factors listed in § 3142(g), and nothing in the record reflects that he did so. The summary statement in his order falls short under either provision. A recitation of the statutory language "devoid of any discussion, analysis, or explanation as to *why* the district court

---

[1] The government has not suggested that the DEA's evidence establishes probable cause to believe Wilks committed a crime while on pretrial release. *See* 18 U.S.C. § 3148(b)(1)(A).

concluded that the criteria for release had not been met" cannot justify detention even *after* conviction, when the presumption of innocence has been extinguished. *United States v. Swanquist*, 125 F.3d 573, 575–76 (7th Cir. 1997). It does no better pretrial. A finding that the defendant violated a release condition does not alone permit revocation; the judge must make findings under both § 3148(b)(1) and (b)(2) before he may revoke release.

The government attempts to fill the gap in the judge's explanation by pointing to the evidence it presented to the magistrate judge at the initial detention hearing and suggests that Wilks's conditions were intended to be strictly enforced because Wilks is so dangerous. But we will not weigh the § 3142(g) factors here. Instead, we leave it to the district judge to do so in the first instance.

Accordingly, we REVERSE the judge's order and REMAND for further proceedings consistent with this opinion. We do not order Wilks's immediate release and express no opinion on the merits of the questions to be addressed on remand. The parties and district court should promptly address these matters. *See* 18 U.S.C. § 3142(d).